# GOODLETT *v.* LOUISVILLE AND NASHVILLE RAILROAD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF TENNESSEE.

Argued April 4, 1887. — Decided May 27, 1887.

The Louisville and Nashville Railroad Company is a corporation of Kentucky, and not of Tennessee, having from the latter state only a license to construct a railroad within its limits, between certain points, and to exert there some of its corporate powers.

The rule announced in *Phœnix Insurance Company* v. *Doster,* 106 U. S. 32, and in *Randall* v. *Baltimore and Ohio Railroad,* 111 U. S. 482, as to when a case may be withdrawn from a jury by a peremptory instruction, reaffirmed.

THIS action was brought in the Circuit Court of Williamson County, Tennessee, by Simon Callahan, to recover damages for personal injuries sustained by him while in the discharge

of his duties as section foreman on a railroad between Nashville, Tennessee, and Decatur, Alabama, which at the time, was operated by the Louisville and Nashville Railroad Company. The declaration alleged that the defendant was a corporation created by the legislature of Tennessee, and that the injuries complained of were caused by the negligence and carelessness of that company, its servants and agents. In due time, the defendant filed its petition, accompanied by bond in proper form, for the removal of the action into the Circuit Court of the United States for the Middle District of Tennessee — alleging that the plaintiff was a citizen of Tennessee, and that the defendant was a citizen of Kentucky, having its principal place of business in that commonwealth. The state court made an order recognizing the right of removal, and declaring that no further proceedings be had therein in said suit.

In the Circuit Court, a motion to remand the cause to the state court — the ground of·such motion being·that the defendant was a corporation of Tennessee, and therefore a citizen of the same state with the plaintiff — was denied. To that action of the court an exception was taken.

Upon the trial of the case the court gave a peremptory instruction to find for the defendant. It also refused to give the instructions asked in behalf of the plaintiff. The plaintiff sued out this writ of error.

*Mr. F. E. Williams*, at the argument of the case, submitted for plaintiff in error on his brief. *Mr. Bate* was with him on the brief.

We concede for the plaintiff in error that the defendant company was first chartered by the state of Kentucky. But we insist that it was *also* chartered by the state of Tennessee; and that its *status* is the same in Tennessee as if it had been originally created by that state, because that state *adopted* it. Such would be the law if these were the facts in the case. *Müller* v. *Dows*, 94 U. S. 444; *Uphoff* v. *Chicago & St. Louis Railroad,* 5 Fed. Rep. 545; *Railway Co.* v. *Whitton,* 13 Wall. 270.

We furthermore concede, if the legislation of Tennessee had no greater effect than merely to license and permit the Louisville and Nashville Railroad Company, as a foreign corporation, to have " a right of way to construct its road " in Tennessee, that such license would not convert the company into a corporation of the latter state. But we submit that Tennessee has done more than this — has not only granted a right of way to construct a road, but has conferred *power* to construct it, and also *charter privileges* in such terms as to adopt this corporation and make it its own. The question is always a question of *intent*. *Railroad Co.* v. *Harris*, 12 Wall. 65, 83; and all the statutes which relate to the question must be read by themselves. *Railroad Co.* v. *Schutte*, 103 U. S. 118, 140.

The first act passed by Tennessee was enacted December 4, 1851, and is entitled " An act to *incorporate* the Louisville and Nashville Railroad Company." January 10, 1852, another act was passed, entitled " An act to *amend* the *charter* of the Louisville and Nashville Railroad Company, passed the 4th of December, 1851." December 15, 1855, still another act was passed, entitled: " An act to amend an act, entitled 'An act to *charter* the Louisville and Nashville Railroad Company, and the several acts amending said act passed by the legislatures of *Kentucky and Tennessee.*'" March 20, 1858, a fourth act was passed, entitled " An act to amend the *charter*, and several acts amendatory thereto, passed by the legislature of *Tennessee and Kentucky incorporating a company* to construct a railroad from the city of Louisville to the city of Nashville."

These titles of acts unmistakably indicate that the legislatures of Tennessee *thought* they were creating a corporation in part, and that the Louisville and Nashville Railroad Company owed its *existence* to *Tennessee* as well as to Kentucky. In this opinion the legislature of Kentucky also shared. On the 21st day of February, 1868, the legislature of that state passed an act to amend the charter of this company. Among other things this act so amended the charter as to authorize the company to consolidate with other roads. It authorized the consolidating companies to adopt such name as they might

choose, and expressly provided that in such name it should have all the powers and privileges conferred upon said company " by the laws of *Kentucky and Tennessee.*"

It being apparent now what the legislature of Tennessee *intended* to do, and also that the legislatures of both states *believed* that Tennessee had succeeded therein, the question is whether in point of *fact* such intent had been carried into effect. We submit that it had.

The Louisville and Nashville Railroad Company was chartered by the state of Kentucky March 5, 1850. This charter act was amended by that state March 20, 1851. An examination of the charter contained in these acts will disclose that no power is granted or conferred to build a foot of road or to operate a road *in Tennessee,* even upon the condition of procuring that state's consent. It empowers the company to build a road from Louisville in the *direction* of Nashville, but only *to the Tennessee line.* So much of the act as confers the powers upon the company is contained in the fourteenth section of the act of 1850, and is as follows: " Section 14. That the President and Directors of said company are hereby vested with all powers and rights necessary to the construction of a railroad from the city of Louisville *to the Tennessee* line, in the *direction* of Nashville." Where, then, did the company get the *power* to construct a road in Tennessee, except from Tennessee? The first section of the Tennessee act of December 4, 1851, standing *alone,* is susceptible of the construction that it only grants a mere right of way, but the act as a whole does more. It abrogates and declares void (in the sixth section) two sections of the charter granted by Kentucky, and the seventh section adds four sections to the charter granted by the state of Kentucky, with the declaration that these four added sections " are hereby made a part of the *charter* of the Louisville and Nashville Railroad Company." December 15, 1855, the legislature of Tennessee passed an act, entitled " An act to amend an act to charter the Louisville and Nashville Railroad Company, and the several acts *amending* said act passed by the legislatures of *Kentucky and Tennessee,*" which made certain provision, with reference to a lien

in the event "said company shall receive the *aid* of the state of Tennessee." This act also contained other important amendatory provisions. The first section empowered the company to sell its bonds. The third section provided what disposition should be made of the profits realized on the stock in the company held by the city of *Louisville, Ky.*, and also that the holders of the bonds to be issued might demand and receive *stock* for their bonds, upon certain named contingencies. Sections 5 and 16 authorized the tax-payers of Sumner and Davidson Counties, in Tennessee, to demand stock for the money paid by them as taxes, used to pay the interest on the bonds issued by those counties to aid in the construction of the road. Section 11 of said act *consolidated* the Louisville and Nashville Railroad Company and the Edgefield and Kentucky Railroad Company (a Tennessee corporation) for the purpose of building a bridge across the Cumberland River at Nashville, and gave each company $100,000 for that purpose. The twelfth section of the act also conferred upon these two companies above named the power to construct a road not exceeding ten miles in length to be used in *common*. Section 14 provided for the addition of two directors to the number allowed by the original charter; and § 15 conferred *power* to make certain agreements with *any* county through which the road passed. Section 6 conferred upon the company the power to buy negroes to be used for the construction or operation of the road; and then when they should no longer be needed for that purpose, to sell or hire them, either in Kentucky or Tennessee.

The act of Tennessee passed March 20, 1858, after declaring in its title that it is an act to amend the charter granted by the legislatures of Kentucky and Tennessee, provides as follows: "SECTION 1. *Be it enacted by the General Assembly of the state of Tennessee,* That the several acts of the states of *Kentucky and Tennessee,* be and are hereby, *amended* by the additional sections." Section 2 confers power to issue bonds. Section 4 provides for a sinking fund (to meet the bonds) to be set apart by the "President and Directors of said company." Section 5 provides that "the issue of the bonds

herein authorized shall be conclusive evidence of the accept-
ance of the company of this as *an amendment to their charter.*"
Such are a few of the important powers conferred upon this
company by the state of Tennessee. The terms in which
these powers are conferred; the fact that all of them are
important, and that many of them were *essential* (to enable
the road to get from the state line to Nashville); the pecuniary
aid of $10,000 per mile, and $100,000 for a bridge, granted
by Tennessee; the concurrent legislative interpretation of
these statutes by both states, as being charter statutes confer-
ring organic power upon the company, and not simply grant-
ing a mere right of way — make it indubitable that the state
of Tennessee has adopted this company and conferred upon it
like powers to those granted to corporations of its own crea-
tion.

One state can make a corporation of another state, as there
organized and conducted, a corporation of its own, *quoad* any
property within its territorial jurisdiction. *Graham* v. *Boston,
Hartford & Erie Railroad,* 118 U. S. 161, 168; *Railroad Co.*
v. *Harris,* 12 Wall. 65, 82. And this is allowable, for the
reason that a corporation of one state has no existence as a
legal entity or person in another state, except under and by
virtue of its incorporation by the latter state. *Memphis, &c.,
Railroad Co.* v. *Alabama,* 107 U. S. 581, 585; *Müller* v. *Dows,*
94 U. S. 444; *Railroad Co.* v. *Vance,* 96 U. S. 450; *Stone* v.
*Farmers' Loan and Trust Co.,* 116 U. S. 307; *Uphoff* v. *Chi-
cago, &c., Railroad,* 5 Fed. Rep. 545. When these cases are
considered, all together, it is settled, that when it is apparent
from the powers conferred, the language used, and the man-
ner in which the powers conferred are to be exercised, that the
second state means and intends to *create* a corporation in
whole or in part; or to adopt one already created by another
state, and give it a *status* such as would have been given to
the corporation as a "person" of its own creation, then such
corporation will be regarded as a corporation of the latter
state, with respect to suits brought in such state.

Inasmuch as this corporation is not only indebted to the
state of Tennessee for a large share of the corporate powers it

possesses, but for its very existence, since the generous manner in which the state bestowed pecuniary aid and assistance enabled it to be constructed, it ought to be very clear that this creature of Tennessee cannot be brought to justice in her courts before it is so decided. Under the circumstances doubts, if any there be, must be resolved in favor of the state.

For these reasons we respectfully submit that the case should be reversed, to the end that it may be remanded to the state court of Tennessee in which it was originally instituted.

*Mr. Edward Baxter* for defendant in error.

After argument the following order was made by the court, April 18, 1887.

Leave is granted counsel on both sides to file additional printed arguments on the third, fourth, fifth, and sixth assignments of error at any time before Monday, May 2, if they desire to do so. It is the wish of the court that this be done.

*Mr. F. E. Williams* under this order submitted a brief for plaintiff in error.

The court charged the jury as follows: The court amongst other things charged the jury that the question of jurisdiction was for the court, and that the defendant had the right to remove, and had removed, the cause from the state court to the United States Circuit Court; that the legislature of Tennessee had not incorporated the defendant, but had merely given to it, as a corporation of the state of Kentucky, a license or privilege to extend its railroad through Tennessee from the Kentucky line to Nashville; that this case fell under the authority of the case of *The Railroad Company* v. *Harris*, 12 Wall. 65, 86.

" This brings us, gentlemen of the jury, to that part of the case within your province. The evidence in the case satisfies me that the defendant complied with the requirements of § 1166, Code of Tennessee, so far as the circumstances attending plaintiff's injury are concerned. Plaintiff was an employe of defendant and bound to use at least the care and diligence of

a reasonable and prudent man in its service. He seems to have gone two or three times to the agent at Franklin to inquire the time, thus showing that something had raised his apprehensions and put him on his inquiry. He stopped his hand-car and listened for approaching trains, and yet went into the deep cut and sharp curve, where he was hurt, without having sent any flagman or other person ahead to warn him or the train of approaching danger. In this he did not exercise reasonable care and prudence, but was guilty of negligence, so that had the people upon the train or the persons controlled by him been injured, they could have recovered against his employer for his negligence. Under the facts proven in this case, were you to give a verdict against the defendant, I should feel bound to set it aside and grant a new trial. In such a state of the case it is my duty to instruct you to find a verdict for the defendant, and I accordingly do so, declining to give the instructions requested by plaintiff's counsel."

The assignments of error referred to in the order of the 18th of April are as follows:

*Third.* The court erred in taking the case from the jury, and in saying to them: "The evidence in the case satisfies me that the defendant complied with the requirements of § 1166, Code of Tennessee, so far as the circumstances attending plaintiff's injuries are concerned."

*Fourth.* The court erred in charging the jury as follows: "Under the facts proven in this case, were you to give a verdict against the defendant, I should feel bound to set it aside and grant a new trial. In such a state of the case it is my duty to instruct you to find a verdict for the defendant, and I accordingly do so, declining to give the instructions requested by plaintiff's counsel."

*Fifth.* The court erred in charging the jury, in effect, that the plaintiff did not exercise reasonable care, but was guilty of negligence, and that this negligence defeated any right of recovery.

*Sixth.* The court erred in withdrawing the case from the jury when there were disputed facts in issue.

The charge of the judge presiding below shows that the

question of negligence was considered by him as one determinative of the plaintiff's right to recover. Said the judge: "Plaintiff was an employe of defendant and bound to use at least the care and diligence of a reasonable and prudent man in its service. . . . He went into the deep cut and sharp curve, where he was hurt, without having sent any flagman or other person ahead to warn him or the train of approaching danger. In this he did not exercise reasonable care and prudence, but was guilty of negligence."

And for this reason he said: "The evidence in the case satisfies me that the defendant complied with the requirements of § 1166, Code of Tennessee, *so far as the circumstances attending plaintiff's injury* are concerned."

It is obvious that the plaintiff's "negligence" and "want of care" in going into the cut and sending no flagman forward, were the chief "circumstances attending the plaintiff's injury," which satisfied his honor that the railroad company had complied with the requirements of the Code of Tennessee. But, as he had that conception of the law, he naturally concluded that he could not allow a verdict against the defendant (if one should be rendered) to stand; and he directed a verdict to be returned for the defendant.

We respectfully submit that this is an erroneous interpretation of the statutes regulating the running of railroads in Tennessee. See *Hill* v. *Louisville & Nashville Railroad*, 9 Heiskell, 823; *Louisville & Nashville Railroad* v. *McKenna*, 7 Lea, 313; *Railroad* v. *Gardner*, 1 Lea, 688, 691.

The statute is *imperative*. If the company fail to observe *all* the statutory requirements, it is responsible even though the plaintiff was guilty of contributory negligence. Contributory negligence does not affect the plaintiff's *right* to recover, but must be considered in *mitigation of damages*. *Nashville, &c., Railroad* v. *Nowlin*, 1 Lea, 523; *Railroad* v. *Gardner*, 1 Lea, 688, 692; *Louisville & Nashville Railroad* v. *Connor*, 2 Baxter, 382, 388; *Nashville, &c., Railroad* v. *Smith*, 6 Heiskell, 174; *Railroad* v. *Walker*, 11 Heiskell, 383, 385, 386.

The fact that the injured person is an *employe* of the company is immaterial, so far as the *general lines* of the road are

concerned; but there is one exceptional case wherein the fact that the person guilty of contributory negligence is an *employe* is material, and goes to the very right of action. "The statute, in terms, makes no exception." But the courts of Tennessee have made one, which is that this statute does not apply to the *employes* of the company engaged in "making up" trains and switching cars, *&c., in the yards and depots* of the company. *Louisville & Nashville Railroad* v. *Robertson,* 9 Heiskell, 276, 282; *Haley* v. *Mobile & Ohio Railroad,* 7 Baxter, 239, 244; *Moran* v. *Nashville, &c., Railroad Co.,* 2 Baxter, 379, 381.

The precautions which the statute prescribes are of two kinds — general and particular. The particular, specified in the statute, are: (*a*) To always keep a lookout ahead; (*b*) when any person, animal, or other obstruction appears upon the track to sound the alarm whistle; (*c*) and put the brakes down. The general precautions are demanded by the words, "every possible means." By this is understood that the engine shall be reversed; that all the brakes were applied; that there were sufficient brakemen; that the machinery was in good order, and up to the present state of the art; and that the employes used all the means at their command to stop the train and prevent the accident.

And the burden of proof is on the company to show that all these requirements were observed. Code of Tenn. 1884 (Milliken and Vertrees), § 1300. *Louisville & Nashville Railroad* v. *Parker,* 12 Heiskell, 49.

Another thing must be noted in this connection, and that is, the provision that some person shall always be upon the lookout ahead, means that as soon as the person or animal on the track *could* be seen by the lookout, it *must* be seen. It is not sufficient for the company to show that as soon as it *was* seen everything possible was done to stop the train, but the company must also show that the person or animal *was* seen as soon as it *could* have been seen by the lookout doing his duty at his post. *Railroad* v. *White,* 5 Lea, 540; *Louisville & Nashville Railroad* v. *Connor,* 9 Heiskell, 19, 26.

An examination of the evidence shows that these precautions were not observed.

III. If there is any evidence tending to prove the issue on either side, it is error to withdraw the case from the jury. *Hickman* v. *Jones*, 9 Wall. 197; *Manchester* v. *Ericsson*, 105 U. S. 347; *United States* v. *Tillotson*, 12 Wheat. 180. Directions to find for a party can only be given where there is no conflicting evidence. *Klein* v. *Russell*, 19 Wall. 433; *Moulor* v. *Ins. Co.*, 101 U. S. 708. A case should not be withdrawn from a jury unless facts are undisputed or testimony so conclusive that a verdict in conflict with it would be set aside. *Conn. Ins. Co.* v. *Lathrop*, 111 U. S. 612; *Phœnix Ins. Co.* v. *Doster*, 106 U. S. 30. It is true the rule is that when the evidence given at the trial, with all the *inferences* which the jury could justifiably draw from it, is insufficient to support a verdict, so that such verdict, if returned, *must* be set aside, the court may direct a verdict for the defendant. *Schofield* v. *Chicago & St. Paul Railway*, 114 U. S. 619. But that is not this case.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

The first question presented by the assignments of error relates to the refusal by the court below to remand the action to the state court. If the defendant is a corporation of Kentucky, then its right to have the case removed from the state court cannot be denied.

Whether a corporation created by the laws of one state is also a corporation of another state within whose limits it is permitted, under legislative sanction, to exert its corporate powers, is often difficult to determine. This is apparent from the former decisions of this court. To some of those decisions i' will be well to refer, before entering upon the examination of the particular statutes of Tennessee, which, it is claimed, created the defendant a corporation of that state.

In *Ohio & Mississippi Railroad Co.* v. *Wheeler*, 1 Black, 286, 293, 297, it was a question whether that company was not a corporation both of Indiana and Ohio. The company, claiming in its declaration to be "a corporation created by the

laws of the states of Indiana *and* Ohio, and having its princi-
pal place of business in Cincinnati, in the state of Ohio, a
citizen of the state of Ohio," sued Wheeler, a citizen of Indi-
ana, in the Circuit Court of the United States for the district
of Indiana. It was incorporated by an act of the legislature
of Indiana. Subsequently the legislature of Ohio passed an
act reciting the incorporation of the company in Indiana, and
declared that "the corporate powers granted to said company
by the act of Indiana, incorporating the same, be recognized."
At a later date the legislature of Ohio passed an act author-
izing the extension of the company's road to Cincinnati, declar-
ing that the intention of the previous act "was to recognize,
affirm, and adopt the charter of the said Ohio and Mississippi
Railroad Company, as enacted by the legislature of the state
of Indiana."

In the opinion of the court it is said "that a corporation by
the name and style of the plaintiff appears to have been char-
tered by the states of Indiana and Ohio," and, therefore, that
the company was "a distinct and separate corporate body in
Indiana from the corporate body of the same name in Ohio."

In *Railroad Co.* v. *Harris,* 12 Wall. 65, 83, it appeared
that the Baltimore & Ohio Railroad Company was incorpo-
rated by the state of Maryland for the purpose of securing
the construction of a railroad from Baltimore to some suitable
point on the Ohio River. Subsequently, Virginia, by a stat-
ute, which set out at large the Maryland act, declared that
"the same rights and privileges shall be and are hereby
granted to the aforesaid company, in the territory of Virginia,
as are granted to it within the territory of Maryland" — the
company to be subject to the same pains, penalties, and obli-
gations as were imposed by the Maryland act, and the same
rights, privileges and immunities being secured to Virginia
and her citizens, except as to lateral roads. Congress, at a
later date, passed an act authorizing the company to extend
its road into the District of Columbia, and to exercise "the
same powers, rights and privileges, and shall be subject to the
same restrictions in the construction and extension of said
lateral road into and within the said District, as they may ex-

ercise or be subject to under or by virtue of the said act of incorporation in the construction and extension of any railroad in the state of Maryland," &c. Touching the question whether the legislation of Virginia and of Congress created a new corporation, this court said: "In both, the original Maryland act of incorporation is referred to, but neither expressly or by implication create a new corporation. The company was chartered to construct a road in Virginia as well as in Maryland. The latter could not be done without the consent of Virginia. That consent was given upon the terms which she thought necessary to prescribe. . . . The permission was broad and comprehensive in its scope, but it was a license and nothing more. It was given to the Maryland corporation as such, and that body was the same in all its elements and in its identity afterwards as before. Referring to *Ohio and Mississippi Railroad Co.* v. *Wheeler*, the court said that, "as the case appears in the report, we think the judgment of the court was correctly given. It was the case of an Indiana railroad company, licensed by Ohio, suing a citizen of Indiana in the Federal court of that state."

In *Railroad Co.* v. *Vance*, 96 U. S. 450, 457, an act of the Illinois legislature, referring to a lease made by the Indianapolis and St. Louis Railroad Company, an Indiana corporation, of a certain railroad in Illinois, belonging to the St. Louis, Alton and Terre Haute Railroad Company, an Illinois corporation, and declaring that "the said lessees, their associates, successors, and assigns, shall be a railroad corporation in this state, under the style of the Indianapolis and St. Louis Railroad Company, and shall possess the same or as large powers as are possessed by said lessor corporation, and such other powers as are usual to railroad corporations," was held not to be a mere license to an Indiana corporation to exert its corporate powers, and enjoy its corporate rights and privileges, in Illinois, but to create the lessees, their associates, successors, and assigns, a distinct corporate body in the latter state. The court said: "It does more: it gives the style by which that corporation shall be known. Still further, it does not authorize the complainant corporation to exercise in Illinois the

corporate powers granted by the laws of Indiana, but confers, by affirmative language, upon the corporation, which it declares shall be a railroad corporation in Illinois, 'the same or as large powers as are possessed' by an Illinois corporation, the St. Louis, Alton and Terre Haute Railroad Company, and, in addition, such other powers as are usual to railroad corporations. The Indianapolis and St. Louis Railroad Company, as lessee of the St. Louis, Alton and Terre Haute Railroad Company, was thus created, by apt words, a corporation in Illinois. The fact that it bears the same name as that given to the company incorporated by Indiana cannot change the fact that it is a distinct corporation, having a separate existence derived from the legislature of another state."

In *Memphis & Charleston Railroad Co.* v. *Alabama*, 107 U. S. 581, 584, the question was as to the citizenship of the corporation against which that suit was brought by the state of Alabama. The state of Tennessee, in 1846, created a corporation by the name of the Memphis and Charleston Railroad Company. The legislature of Alabama subsequently passed an act entitled "An act to incorporate the Memphis and Charleston Railroad Company." That act referred to the act of the Tennessee legislature, and granted to said company a right of way through Alabama, to construct its road between certain points named, declaring that it should have all the rights and privileges granted to it by the said act of incorporation, subject to the restrictions therein imposed. The statute contained other provisions of the same general nature, from all of which, however, it was not, as this court observed, made quite clear, whether the company referred to in the body of the act was the one which the act in its title purported to incorporate, or the one created by the Tennessee act and referred to in the preamble of the Alabama act. But there were other sections expressly referring to the company "hereby incorporated," that is, incorporated by the Alabama act. The whole of the latter act, taken together, the court said, manifests the understanding and intention of the legislature of Alabama that the corporation, which was thereby granted a right of way to construct through that state a railroad, "was

and should be in law a corporation of the state of Alabama, although having one and the same organization with the corporation of the same name previously established by the legislature of Tennessee."

In the recent case of *Pennsylvania Company* v. *St. Louis, Alton & Terre Haute Railroad Company*, 118 U. S. 290, 295, 296, the general question now before us received careful consideration. It was there said : "It does not seem to admit of question that a corporation of one state, owning property and doing business in another state, by permission of the latter, does not thereby become a citizen of this state also. And so a corporation of Illinois, authorized by its laws to build a railroad across the state from the Mississippi River to its eastern boundary, may, by permission of the state of Indiana, extend its road a few miles within the limits of the latter, or, indeed, through the entire state, and may use and operate the line as one road by the permission of the state, without thereby becoming a corporation or a citizen of the state of Indiana. Nor does it seem to us that an act of the legislature conferring upon this corporation of Illinois, by its Illinois corporate name, such powers to enable it to use and control that part of the road within the state of Indiana, as have been conferred on it by the state which created it, constitutes it a corporation of Indiana. It may not be easy in all such cases to distinguish between the purpose to create a new corporation, which shall owe its existence to the law or statute under consideration, and the intent to enable the corporation already in existence, under laws of another state, to exercise its functions in the state where it is so received. To make such a company a corporation of another state, the language used must imply creation, or adoption in such form as to confer the power usually exercised over corporations by the state, or by the legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privileges or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the state conferring such powers."

So that the essential inquiry here must be, whether, within the doctrine established in the cases we have cited, the state

of Tennessee, by her legislation, granted a mere license to the Louisville and Nashville Railroad Company to exercise within her limits all or some of the powers conferred upon it by the state of Kentucky, or established a new corporation over which she could exert such direct control and authority as is usually exerted by a state over corporations of her own creation.

The solution of this question depends upon the intent of the legislature of Tennessee, as gathered from the words used in the statutes now to be examined.

We lay out of view the acts of the General Assembly of Tennessee, approved February 1, 1850, incorporating a company by the name of the Louisville and Nashville Railroad Company, and the act of February 9, 1850, entitled "An act to incorporate the Nashville and Louisville Railroad Company." It appears in evidence that no organization was effected under those acts, and we do not understand the counsel for the plaintiff to rely upon either of them as showing that the present defendant is a corporation of Tennessee.

By an act of the General Assembly of Kentucky, approved March 5, 1850, a corporation was created by the name of the Louisville and Nashville Railroad Company, with power to construct a railroad "from the City of Louisville to the Tennessee line, in the direction of Nashville;" and by an act of the same body, approved March 20, 1851, authority was given to connect said road "with any railroad extending to Nashville, on such terms and conditions as the two companies may, from time to time, agree on, for the through transportation and travel of freight and passengers."

On the 4th of December, 1851, the General Assembly of Tennessee passed an act, the *title* of which is "An act to *incorporate* the Louisville and Nashville Railroad Company." As the question of citizenship depends mainly upon the construction of that act, it is given in full, as follows:

"SECTION 1. *Be it enacted by the General Assembly of the state of Tennessee*, That the right of way for the construction of a railroad from the line between the states of Kentucky and Tennessee, so as to connect the cities of Louisville and

Nashville by railroad communication, be, and is hereby, granted to the Louisville and Nashville Railroad Company, incorporated by the legislature of Kentucky, with all the rights, powers, and privileges, and subject to all the restrictions and liabilities set forth and prescribed in a charter granted to said company by the legislature of Kentucky, and approved March the 5th, 1850, and the amendments thereto, passed by said legislature, and approved March the 20th, 1851, for the term of nine hundred and ninety-nine years, except as further provided in this act.

" Sec. 2. *Be it further enacted,* That said company shall construct said railroad from the boundary line between said states, beginning at said line where it shall be intersected by that part of said railroad which is to be within the state of Kentucky, to (a point within or convenient to) the city of Nashville: *Provided,* That in the construction of said railroad said company shall commence at each end of the line at the same time, and continue the work from each end until said railroad is completed: *Provided further,* That said company shall not be compelled to use the capital stock subscribed and paid in by the citizens, companies, corporations, or counties in the state of Kentucky in the construction of that part of said railroad lying in the state of Tennessee until the part thereof lying in Kentucky is completed.

" Sec. 3. *Be it further enacted,* That so soon as said company shall have completed five miles of said railroad from Nashville, they may commence and prosecute their business, as provided in the twenty-first section of said charter; that the tariff of charges for transportation of passengers and for goods, wares, merchandise, and other articles and commodities, shall be equal on all parts of said railroad in proportion to distance, and that equal facilities for the transportation of the same in either direction shall be furnished.

" Sec. 4. *Be it further enacted,* That the stockholders in the state of Tennessee shall be entitled to be represented in said company by directors residing in Tennessee in proportion to their stock, to be chosen by the stockholders of the company in the manner and at the time the other directors are chosen.

" SEC. 5. *Be it further enacted*, That nothing in this act, or in said charter or amendments thereto, shall be so construed as to prohibit the legislature of Tennessee from passing any law authorizing the construction of railroads within this state paraliel to, crossing, or to unite with said railroad from Louisville to Nashville, and the state of Tennessee reserves the right so to do.

" SEC. 6. *Be it further enacted*, That the twentieth section of said charter and the fourth section of the amendments thereto shall be void and of no force or effect within this state.

" SEC. 7. *And be it further enacted*, That the twenty-third, twenty-fourth, twenty-fifth, and twenty-ninth sections of the act of the 11th December, 1845, incorporating the Nashville and Chattanooga Railroad Company, be, and are hereby, made a part of the said charter of the Louisville and Nashville Railroad company, to be in force within this state, and that this bill shall take effect from and after its passage: *Provided*, That the Commonwealth of Kentucky shall grant to the state of Tennessee, or to such companies as the General Assembly may charter, the right of way from Nashville to intersect with the Lexington and Danville Railroad at Danville, Harrodsburg, or such other point on that road as the company may designate, provided it does not interfere with any vested rights of the citizens of Kentucky, with the like powers and privileges granted to this company.

" SEC. 8. *Be it further enacted*, That the company shall bring said railway to the city of Nashville, or South Nashville, and locate their depot convenient to the Nashville and Chattanooga Railroad, so as to form the connection."

Some stress is laid upon the title of that act, as indicating a purpose to create a corporation, and not simply to recognize an existing one of another state, and invest it with authority to exert its functions within the state of Tennessee. While the title of a statute should not be entirely ignored in determining the legislative intent, it cannot be used " to extend or restrain any positive provisions contained in the body of the act," and is of little weight even when the meaning of such

provisions is doubtful. *Hadden* v. *Collector*, 5 Wall. 107, 110. Looking, then, at the body of the Tennessee act of December 4, 1851, we find no language clearly evincing a purpose to create a new corporation, or to adopt one of another state, in such form as to establish the same relations, in law, between the latter corporation and the state of Tennessee, as would exist in the case of one created by that state. The act grants to a named company "incorporated by the legislature of Kentucky" a right of way, within designated limits, for the construction of a railroad, with all the rights, powers, and privileges, and subject to all the restrictions and liabilities prescribed in its original and amended charter, "except as further provided in this act." The remaining sections of the act are, in form, additions and alterations of the charter of the Kentucky corporation; but, in effect, they only prescribe the terms and conditions upon which that corporation was given a right of way and permitted to construct a railroad and exercise its powers in Tennessee.

If the legislature of the latter state intended to do anything more than grant a license to a corporation of another state to construct a railroad and exert its corporate functions within her limits; if it was intended to bring into existence a corporation subject to the paramount authority of Tennessee as were other corporations created by her laws; certain sections of the act incorporating the Nashville and Chattanooga Railroad Company would not have been made a part of the charter of the Louisville and Nashville Railroad Company, to be in force simply " in this [that] state;" but would have been incorporated into the company's charter, to be in force wherever and whenever it exerted the powers granted to it. And the same observation applies to the proviso in the 7th section of the act of December 4, 1851, which requires that Kentucky should grant to Tennessee, or to such companies as the latter state might "charter," the right of way from Nashville to intersect with a named road at certain points in Kentucky, with the like powers and privileges granted by Kentucky to the Louisville and Nashville Railroad Company.

Taking the whole of that act together, we are satisfied that

it was not within the mind of the legislature of Tennessee to create a new corporation, but only to give the assent of that state to the exercise by the defendant, within her limits, and subject to certain conditions, of some of the powers granted to it by the state creating it.

This construction is not, if indeed it could be, affected by the subsequent legislation of Tennessee. While the titles of the acts of January 10, 1852, December 15, 1855, and March 20, 1858, give some slight support to the position taken by the plaintiff, the acts themselves do not militate against the conclusions here expressed. In legal effect, they only impose other terms and conditions than those prescribed in the original act, upon the exercise by the defendant, within Tennessee, of the powers and privileges conferred by its charter, as granted by Kentucky.

Upon the authority of the cases cited, and for the reasons herein stated, we are of opinion that the Louisville and Nashville Railroad Company is a corporation of Kentucky, and not of Tennessee, and, consequently, that the action was removable, upon its petition and bond, into the Circuit Court of the United States.

It only remains to consider the assignments of error relating to the charge to the jury, and to the refusal of the court to give certain instructions in behalf of the plaintiff. The bill of exceptions states, that " on the trial of this cause the following testimony was submitted to the jury." Then follows the evidence of numerous witnesses for the respective sides, given in narrative form, and the charge of the court. The court, among other things, charged the jury, that the plaintiff did not himself exercise reasonable care and prudence, but was guilty of negligence, so that had the people upon the train, or the persons controlled by him, been injured, they could have recovered against his employer for his negligence. " Under the facts proven in this case," the judge said, " were you to give a verdict against the defendant, I should feel bound to set it aside and grant a new trial. In such a state of the case, it is my duty to instruct you to find a verdict for the defendant, and I accordingly do so, declining to give the

instructions requested by plaintiff's counsel." The bill of exceptions does not, in express words, state that it contains all the evidence introduced at the trial.

Assuming, but without deciding, that the bill of exceptions sufficiently shows that all the evidence is embodied in the record, the question arises whether the court erred in withdrawing the case from the jury, and directing a verdict for the company. In *Phœnix Insurance Company* v. *Doster,* 106 U. S. 30, 32, it was said that "where a cause fairly depends upon the effect or weight of testimony, it is one for the consideration and determination of the jury, under proper directions as to the principles of law involved;" and that a case should never be withdrawn from them "unless the testimony be of such a conclusive character as to compel the court, in the exercise of a sound judicial discretion, to set aside a verdict returned in opposition to it." So, in *Randall* v. *Baltimore & Ohio Railroad Company,* 109 U. S. 478, 482, it was declared to be the settled law of this court, "that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

These authorities sustain the charge to the jury. The evidence makes a case of utter recklessness upon the part of the deceased, who was a section boss of the defendant, charged with the duty of keeping its road in repair between certain points, so that trains could pass over it in safety. He was guilty of the grossest negligence in running his hand-car into the deep cut where he was injured, without having sent any one ahead to watch for, and warn the passenger train, which he knew was approaching, or would soon reach that point on the road. But for his negligence in that respect he would not have been injured.

It is said, however, that despite any negligence to be fairly imputed to the deceased, the agents of the company, who were in charge of the passenger train, might have avoided injuring him had they exercised reasonable diligence to that

end. This position is supposed by counsel to be justified by §§ 1166, 1167, and 1168 of the Code of Tennessee, which provide:

"SEC. 1298 (1166). Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.

"SEC. 1299 (1167). Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur.·

"SEC. 1300 (1168). No railroad company that observes, or causes to be observed, these precautions, shall be responsible for any damages done to person or property on its road. The proof that it has observed said precautions shall be upon the company." Code Tenn. 1884 (Milliken and Vertrees), §§ 1298–1300.

Without considering the question whether those sections are intended for the benefit of the general public only, not for the servants of the company.— especially one whose negligence caused or contributed to cause the accident — it is sufficient to say that the court below correctly held that the requirements of the Tennessee Code were complied with by the company, so far at least as the circumstances attending the injury of the deceased are concerned. A verdict based upon a different view of the evidence should have been set aside, upon motion by the defendant.

The jury having been properly directed, in view of all the evidence, to find a verdict for the company, it is unnecessary to consider the exceptions taken to its refusal to grant certain instructions asked in behalf of the plaintiff. The judgment is

*Affirmed.*