BAUGHMAN *v.* NATIONAL WATER-WORKS CO.

*(Circuit Court, W. D. Missouri, W. D.   March 23, 1891.)*

REMOVAL OF CAUSES—CITIZENSHIP OF CORPORATION.
   The citizenship and residence of a corporation within the meaning of the removal acts are fixed in the state granting its charter, although it may be organized for the purpose of doing business chiefly in other states.

At Law.

*C. R. Pearce,* for plaintiff.

*Karnes, Holmes & Krauthoff,* for defendants, cited:

*Fales* v. *Railroad Co.,* 32 Fed. Rep. 673; *Booth* v. *Manufacturing Co.,* 40 Fed. Rep. 1; *Purcell* v. *Land, etc., Co.,* 42 Fed. Rep. 465; *Henning* v. *Telegraph Co.,* 43 Fed. Rep. 97; *Myers* v. *Murray,* Id. 695; and *National Typographical Co.* v. *New York, etc., Co.,* 44 Fed. Rep. 711.

PHILIPS, J., (*orally.*) The case of Baughman against the National Water-Works Company of New York, standing on motion to remand, I had hoped Judge CALDWELL would determine for himself before he left. He was called away unexpectedly and abruptly by reason of his indisposition, and left a letter, in which he requested me to pass upon this question. We had some consultation over the matter, and it is but just to Judge CALDWELL that I should state that while he entertains the opinion, if this were a question of first impression, and he was left to decide the case on what he believes is the better reason, rather than on authority, this court should have no jurisdiction over this case except to remand it. At the same time he is of the opinion that the weight of authority is in favor of the jurisdiction of this court, and has left me to express my own views about the matter. This suit was instituted in the state court against the National Water-Works Company of New York, and upon the petition of the defendant it was removed to this court on the ground that it was a controversy between citizens of different states, and was within the contemplation of the judiciary act in respect of a non-resident of the state. The contention on the part of plaintiff, the promoter of this motion to remand, is that, whilst the National Water-Works Company is a corporation created under the laws of the state of New York, nevertheless, in contemplation of law, it is a resident of this state, because its principal business is conducted at this city, and because it has its manager of the Kansas City water-works in this city, with his

office and supply clerks and employes; and the principal business done by this company is in Kansas City, Mo., in supplying water to the city; and, although it is chartered by the state of New York, under authority of the laws of that state, it is exerting its corporate functions almost exclusively in this state, and to all practical purposes is to be regarded as a resident of this state. The counter-affidavit filed by the defendant company discloses about this state of facts: That the plant of these water-works is in the state of Kansas; that it has a large number of employes in that state, and is supplying water to Kansas City, Kan., a city now composed of the city of Wyandotte and other villages appurtenant thereto; that it is exercising its corporate franchise and functions in that state as well as in this; and while the manager of these works has his head-quarters and clerical force in this city, he makes daily reports to the principal office in the state of New York, where it has a large force of employes, and where its principal business is transacted. By direction of the court the defendant has furnished to the court a copy of the charter of the company, to enable the court to better understand what are the powers of this corporation, and for what purpose it was created. The second section of the charter provides that—

"The object for which this company is formed is to establish, construct, and maintain water-works in or adjacent to any city, town, or village in the United States of America or elsewhere, and to supply the said city, town, or village and the inhabitants thereof with water."

The eighth section declares that—

"The said company is formed for the purpose of carrying on some part of its business out of the state of New York, namely, in or adjacent to any city, town, or village in the United States of America or elsewhere; and the city of New York, in the county and state of New York, is the place where the principal part of the business of said company within this state is to be transacted, and where the general office of said company is to be located."

I take it that there can be no question but the holding of the supreme court of the United States has long been that these corporations have their citizenship and residence fixed by the state granting the charter; that where the charter is granted, there the citizenship or residence exists. And there can be no question upon the further proposition that, taking the decisions of the supreme court ever since it announced this doctrine up to the 122 U. S. Reports, it has always maintained that the terms "citizenship" and "residence" in respect of corporations are synonymous; that they mean one and the same thing; that "residence" is inseparable from "citizenship;" that the charter fixes citizenship, and residence and citizenship are one and the same thing in their legal import. Reference to the authorities will sustain this proposition beyond controversy or cavil. In the case of *Insurance Co.* v. *Francis,* 11 Wall. 210, 216, the court said:

"The declaration avers that the plaintiff in error, the defendant in the court below, is a corporation created by an act of the legislature of the state of New York, located in Aberdeen, Miss., and doing business there under the laws of the state. This, in legal effect, is an averment that the defendant was a citizen of New York, because a corporation can have no legal existence outside

of the sovereignty by which it was created. Its place of residence is there, and can be nowhere else. Unlike a natural person, it cannot change its domicile at will; and, although it may be permitted to transact business where its charter does not operate, it cannot on that account acquire a residence there."

In *Ex parte Schollenberger*, 96 U. S. 377, the court used this language:

"A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter."

And in the case of *Railroad Co.* v. *Koontz*, 104 U. S. 5, the court said:

"By doing business away from their legal residence they do not change their citizenship, but simply the field of their operations; they reside at home, and do business abroad."

And again, the case of *Goodlett* v. *Railroad Co.*, 122 U. S. 391, 7 Sup. Ct. Rep. 1254, is still more pronounced. That was a controversy as to whether the Louisville & Nashville Railroad Company, which was originally chartered by the state of Kentucky, was also a citizen or resident of the state of Tennessee. While the original charter was granted by the state of Kentucky, authorizing the company to extend its line into another state, the contention of counsel was that under the peculiar circumstances of the case it ought also to be deemed as having a double citizenship or residence, because by the act of the legislature of Tennessee it was authorized to extend its road into that state, and was given certain privileges and rights which were not guarantied by the original charter granted by the state of Kentucky; and therefore, inasmuch as it was recognized by the state of Tennessee, etc., and inasmuch as its road is located through the latter state, with its agents and employes and officers at different points therein, it was to all practical intents and purposes a resident of the state of Tennessee. And yet, notwithstanding all that, it was held by the supreme court in a most elaborate opinion, reviewing the authorities, that it continued to be a citizen of the state of Kentucky. It was said:

"Upon the authority of the cases cited we are of the opinion that the Louisville & Nashville Railroad Company is a corporation of Kentucky, and not of Tennessee; and, consequently, the action was removable, upon its petition and bond, into the circuit court of the United States."

It is difficult to conceive of a case where the question of citizenship and residence could more squarely be presented on the issue of the right of removal under the act as it then stood. I do not presume there would ever have been a question raised of the applicability of these rulings, so often repeated, but for the phraseology employed in the act of 1887, which has been seized upon as distinguishing between citizenship and residence. The act of 1887 provides that the United States courts shall have jurisdiction of all cases in which there shall be a controversy between citizens of different states, when the amount involved exceeds $2,000. It gives jurisdiction to the United States courts upon the ground of diverse citizenship. Then the removal act in the next section says:

"That any suit of a civil nature at law or in equity arising under the constitution or laws of the United States, or treaties made, or which shall be made under their authority, of which the circuit courts of the United States are given original jurisdiction by the preceding section, which may now be pending, or which may hereafter be brought in any state court, may be removed by the defendant or defendants therein to the circuit court of the United States for the proper district. Any other suit of a civil nature at law or in equity, of which the circuit courts of the United States are given jurisdiction by the preceding section, and which are now pending, or which may hereafter be brought in any state court, may be removed into the circuit court for the proper district by the defendant or defendants therein being non-residents of that state; and when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the defendants actually interested in this controversy may remove said suit into the circuit court of the United States for the proper district."

A controversy has sprung up as to the meaning of the terms "citizens" and "residents." It seems to me that these terms in the act, as evidenced by the last clause, are interchangeably used, and are employed as synonymous. There is another rule of law, which I think ought to apply to this statute, that whenever a certain term or phrase has received by the repeated construction of the highest courts of the state or the nation a given significance or meaning, and is employed in a subsequent statute, the construction and interpretation placed upon it by the courts of the land preceding the enactment are supposed to have been in the mind of the legislator who framed the statute, and that he has employed it in the sense given it by the courts. The courts had held, as I have already shown, that whenever a corporation was a citizen of a state it was a resident of that state; and when they have spoken of citizenship and residence, especially in respect of these corporations, the courts treated them as one and the same. And I believe if it had been in the mind of congress to deny the right of removal to these corporations as heretofore allowed, it would have employed, for the purpose of restricting the jurisdiction of the United States courts, terms so exact, so specific, and direct, as not to leave it to mere speculation; that, if it intended to deny to these corporations the right of removal by reason of the fact that they had offices in the respective states, and officers and employes upon whom service of process could be had, it would have said so by such apt and explicit terms as not to have left the matter open to controversy. I am furthermore constrained to the position I occupy from this consideration: Mr. Justice BREWER, when on this circuit, in *Booth* v. *Manufacturing Co.*, 40 Fed. Rep. 1, maintained strongly that the right of removal in these cases was to be determined by the citizenship of the corporation. He is now the associate justice assigned to this circuit; so this is the opinion of the justice of this circuit. It is true that Mr. Justice MILLER, in a very brief opinion delivered by him in Iowa a short time before his death, seemed to take the opposite view. The general opinion among the circuit and district judges, so far as I am advised, is that the right of removal exists, under the state of facts here disclosed. Until this question is more authoritatively settled I deem it conservative to follow what is the general practice. The motion to remand is denied.