## HOWES *v.* THE DISTRICT OF COLUMBIA.

REVERSIBLE ERROR ; CONTRIBUTORY NEGLIGENCE ; STREETS AND
SIDEWALKS ; NEGLIGENCE ; PRACTICE.

1. In an appellate court, it is no sufficient ground of complaint that a
   trial judge may have given wrong reasons for a correct judg-
   ment, even if it be assumed that the reasons given were wrong.
2. Where there can be no substantial controversy in regard to the facts
   that constitute alleged contributory negligence, and when the
   facts are such that but one reasonable conclusion can be drawn,
   the question of contributory negligence is one of law for the court.
3. A pedestrian has the right to assume that the portion of a public
   sidewalk reserved for the ordinary purposes of travel, is main-
   tained in good condition, and he is not required to be on the
   lookout for pitfalls in that part of the public highway ; but he
   is required to be on his guard when he approaches the inner
   portion of the sidewalk commonly occupied by steps leading to
   the doors of houses, steps and area-ways leading downward to
   the entrance to basements, bay-window projections, etc., or the
   outer portion occupied commonly by pumps, hitching posts, trees,
   etc., and it is negligence in him to use such portions of the side-
   walk without at least some casual observation of their condition.
4. In a case in which, if the verdict of the jury had been for the
   plaintiff, it would have been the duty of the trial court to have
   set aside the verdict, it was *held* that it was proper for the court
   below to instruct the jury to find for the defendant.

No. 180.    Submitted December 13, 1893.—Decided January 2, 1894.

HEARING on a motion by the plaintiff for a new trial on a
bill of exceptions in a suit to recover damages for personal
injuries. *Judgment affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit at common law for personal injuries sus-
tained by the plaintiff, Horace B. Howes, through the al-
leged negligence of the defendant, The District of Columbia,
in permitting an area or opening in the sidewalk of one of
the streets in Georgetown so to remain unprotected that the
plaintiff fell into it and was injured.

It seems that the grade of part of Montgomery street, at
its intersection with Olive street in Georgetown, had been

raised several years ago; and that adjacent to one of the houses, which was below the new grade, an area or opening, about four feet wide, and running the length of the front of the house, had been left, over part of which the platform extended, from which the steps projected for the entrance to the house, and the remainder of the opening had no protection other than a small coping, about five inches above the pavement and about fourteen inches wide. The street from one building line to the other is sixty feet wide, of which the carriage-way is thirty feet, and each of the sidewalks fifteen feet. The clear sidewalk outside of the coping is about ten or eleven feet.

On the night of the 29th day of September, 1889, about 8 o'clock in the evening, when it was dark and the gas lamps had been lit upon the street, the plaintiff, a man of sixty-eight years of age, who had resided in Georgetown, about six squares from the place where the accident occurred, about fifty years, went out from his home to the neighborhood of the intersection of Montgomery and Olive streets in search of a man named Jones, with whom he had some business. He did not know where Jones lived, and it seemed the latter had only recently moved into the neighborhood. The plaintiff went to the house of an old colored man on Olive street to make inquiry; and the old colored man, whose name was Bolden, went out with him to help him find where Jones lived. They were on one side of the street in consultation. On the opposite corner was the house with the area which has been mentioned, originally a two-story house, of which one story had been almost covered in, except for this area, by the raising of the level of the street. The gas lamp in the house was shining through the window, the shutters of which were opened. It was suggested that inquiry should be made at this house for Jones. The plaintiff and Bolden started together to cross the street diagonally, the plaintiff keeping his eyes constantly on the light in the window. Bolden suggested to him to stop on the sidewalk, and he himself went up to the door to make in-

quiry. But the plaintiff kept right on towards the window, keeping his eye on the light all the time, and not noticing the opening before him; and when he came to the coping, he fell headforemost into the opening, and was injured.

Thereupon he brought the present suit to recover damages from the District. At the trial, the facts, substantially as here stated, were developed in the testimony in considerable detail, the principal witnesses for the plaintiff being himself and Bolden. Upon the close of the testimony for the plaintiff, counsel for the defendant moved the court to instruct the jury to return a verdict for the defendant, on the ground of contributory negligence on the part of the plaintiff; and the court granted the instruction, and the jury returned a verdict in accordance therewith, upon which there was judgment for the defendant. From this judgment the plaintiff has prosecuted the present appeal.

*Messrs. Riddle & Davis* for the plaintiff in error.

*Mr. S. T. Thomas*, attorney for the District of Columbia, and *Mr. Andrew B. Duvall*, assistant attorney for the defendant in error.

Mr. Justice MORRIS delivered the opinion of the Court:

The only question in the case is, whether, upon the plaintiff's own testimony, there was contributory negligence on his part such as to justify the court below in directing a verdict for the defendant.

It is argued on behalf of the appellant that the question is not whether there was contributory negligence on the part of the plaintiff, but whether the court below was right in taking the case from the jury on the ground that the plaintiff was making an improper use of the streets. But this, after all, is only a dispute about form, and not about substance. The instruction asked by the defendant and given by the court, as shown by the record, was that the plaintiff, on account of his contributory negligence, was not entitled to recover. What the court said in granting the instruction is

important here only as far as it tends to enlighten our judgments upon the question involved. It is well settled that, in an appellate court it is no sufficient ground of complaint that a trial judge may have given wrong reasons for a correct judgment, even if we assume the reasons to have been wrong. But the reasons here given are only a different way of stating that the plaintiff was guilty of contributory negligence, and the substantial question in the case is whether the plaintiff was guilty of contributory negligence and whether the evidence of such negligence was so clear that the court was justified in the peremptory instruction which it gave to the jury on the subject.

The law on the subject of contributory negligence is now quite well settled. As stated by the Supreme Court of the United States in the case of the *Grand Trunk Railway Company* v. *Ives*, 144 U. S., 408, it is this: " Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification which has grown up in recent years (having been first enunciated in *Davies* v. *Mann*, 10 M. & W., 546), that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence."* It is only in the application of the rule to each case as it arises that the difficulty accrues to determine whether the question of contributory negligence is one of law for the court, or of fact or mixed law and fact for the jury under the instructions of the court.

In the same case just cited, the Supreme Court of the United States has also determined this point for us, so far, we presume, as it is possible to determine a question the

---

*See *Railroad Co.* v. *Didzoneit*, 1 App. D. C., 482.

solution of which must ever vary according to the varying opinions of men. Says the court, by Mr. Justice Lamar: "When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court."

In order that the question of contributory negligence should become one of law for the court, it is evident that two conditions must concur. First, there must be no substantial controversy in regard to the facts that constitute the alleged contributory negligence; for such controversy would at once relegate the question to the jury; and secondly, the facts must be such that from them reasonable men, in the exercise of a dispassionate and impartial judgment, could draw but one conclusion. There is no substantial controversy in the present case in regard to the facts; they are positively ascertained and undisputed. They depend entirely on the testimony given on behalf of the plaintiff, for it seems that the defendant offered no testimony. Are these facts such that only one reasonable inference can be drawn from them, and that inference to the effect that the plaintiff was not in the exercise of ordinary care and caution when the accident occurred by which he was injured?

It is argued on behalf of the plaintiff that he had the right to assume that the whole sidewalk was free from obstruction; that there were no dangerous pitfalls, excavations, or areas in it; that the sidewalk should be kept in such condition that even a blind man traveling over it, or a child at play, would be perfectly secure, and that the plaintiff had no reason to suppose, and therefore it was not want of due care in him not to assume that there was a dangerous opening in the direction in which he was going.

It is a mistake to assume, as counsel for the plaintiff seems to do, that the sidewalks, so-called, of the cities of Washington and Georgetown, from the building line to the curb-

stone, are intended to be roamed over at will by those having occasion to be upon them for the purpose of travel or pleasure, or for any other purpose. It is very evident to every one that these sidewalks in their entirety are not intended to be free from obstructions. Steps leading to the doors of houses, steps and area-ways leading downwards to the entrance to basements, openings for the admission of light and air to basement windows, projections in the shape of bay windows and other similar constructions on the inner part of such sidewalks, are necessary and recognized obstructions to their free and unlimited use for the purpose of travel over them, and on the outer side we have carriage steps, hitching posts, hydrants, pumps, planted trees, over which the public may not pass in freedom. Very generally also we have now a very considerable portion of this alleged sidewalk taken away from this supposed public use by its reservation for parking purposes. Now, it cannot for a moment be supposed that a person using the sidewalks for the purpose of travel or amusement, or any other purpose in itself lawful, may deliberately close his eyes and stumble over a hydrant, or a carriage step or a projecting portico, or steps leading down to a basement, and hold the municipality responsible for the result of his own recklessness. He has a right to suppose that the portion of the so-called sidewalk reserved for the ordinary purposes of travel over it, is maintained in good condition to subserve that purpose; and he is not required to be on the lookout for pitfalls in that part of the public highway. But he is required to be on his guard when he approaches the inner line; for there he knows, or should know, that there are usually just such obstructions as those that have been mentioned. Almost as frequent of occurrence as the steps leading up to the platform to the main entrance to a house are the steps leading downward to the area by which the entrance is reached to the basement. Can it be that a man may ignore the existence of such steps and of such area, close his eyes to them and walk right onward to the wall of the house to look into the window, or for any

other purpose, and hold the municipality liable if he happens to be injured? We cannot think so. Inside the usual pathway of the so-called sidewalk there is always more or less danger. It is want of ordinary care and caution to ignore that danger. Where the public are invited to come, and where they are in the habit of coming, it would be different. But where it is usual, as in the residence portion of our cities, to have openings for steps, and area-ways in the portion of the sidewalk inside of the usual path of travel, it is negligence in a person to approach too close to the walls of a house without at least some casual observation of the condition of the adjacent sidewalk. It was recklessness in this plaintiff to have done so in the manner and under the circumstances in which he conducted himself; and we cannot think that he is justly entitled to hold the District of Columbia liable for the result of his misadventure.

Nor do we think that it is a case in which the question of negligence should have been submitted to the jury. The testimony is positive, clear and unequivocal. There are no conflicting statements to be taken into consideration. Only the plaintiff's own story is to be regarded; and it is greatly to his credit that he tells his story honestly and candidly. From that story there is but one inference to be drawn, and that is that the plaintiff, probably through thoughtlessness, but still through his own fault, walked diagonally across the pavement and up to the window of the house near which he was injured, without once taking the precaution, which every reasonable and prudent man would take, of looking before him to see whether any of the obstacles to his progress existed which are usually found adjacent to the walls of houses. No man in the exercise of ordinary care and caution would have so acted; and there was nothing, in our opinion, to be submitted to the consideration of a jury. If, upon the testimony now before us, the case had been submitted to the jury, and the jury had rendered a verdict for the plaintiff, we think it would have been not only the right, but the duty, of the court to set aside the verdict. And so thinking, we can-

not suppose that there would have been any propriety in going through an empty formality barren of beneficial results. We think this case falls within the rule laid down in the case of *Baltimore & Potomac Railroad Company* v. *Jones*, 95 U. S., 439 ; *Macon Co.* v. *Shores*, 97 U. S., 278; *Griggs* v. *Houston*, 104 U. S., 553 ; *Goodlett* v. *L. & N. R. R. Co.*, 122 U. S., 391.

We are of opinion, therefore, that there was no error on the part of the court below in directing a verdict for the defendant; and *the judgment must be affirmed with costs.*