## HOLLINGSWORTH v. SOUTHERN RY. CO.

(Circuit Court, D. South Carolina. April 15, 1898.)

STATUTE ADOPTING FOREIGN CORPORATION—JURISDICTION OF UNITED STATES COURTS—DIVERSITY OF CITIZENSHIP.

Act March 9, 1896 (22 St. at Large S. C. p. 114), prescribes the necessary steps to authorize a foreign corporation to transact business in the state, and provides that any foreign corporation complying with such requirements shall become a domestic corporation, enjoy the rights and be subject to the liabilities of such domestic corporation, may sue and be sued in the state courts, and shall be subject to the jurisdiction of the state as fully as though originally created under the laws of South Carolina. *Held*, that a foreign corporation does not, by complying with such statute, become a citizen of South Carolina, so as to affect the jurisdiction of the United States courts over it.

Sheppard & Geier, for plaintiff.

B. L. Abney, for defendant.

SIMONTON, Circuit Judge. This case comes up upon a motion to remand. The cause was originally brought in the court of common pleas of Greenwood county, S. C., against the defendant. The complaint made the following allegations as to the status and citizenship of the defendant:

First. "That the defendants are a body politic and corporate, created by and organized according to law."

Second. "That the plaintiff is informed and believes and alleges that the defendants are a body politic and corporate, chartered by and organized under the laws of the state of Virginia."

Third. "That the plaintiff is informed and believes and alleges that the defendants have complied with the provisions of an act of the general assembly of the state of South Carolina, approved March 9th, A. D. 1896, entitled 'An act to provide the manner in which railroad companies incorporated under the laws of other states or countries may become incorporated in this state,' and are doing business in this state, under the name and style of 'Southern Railway Company.'"

Fourth. "That in and by the provisions of the act of the general assembly of South Carolina mentioned in the next preceding paragraph hereof, and in the 3rd section thereof, it is provided 'that when a foreign corporation complies with the provisions and requirements of this act, it shall ipso facto become a domestic corporation, and shall enjoy the rights and be subject to the liabilities of such domestic corporations; it may sue and be sued in the courts of this state, and shall be subject to the jurisdiction of this state as if it were originally created under the laws of the state of South Carolina.'"

Fifth. "That the defendants are now, and at the times hereinafter mentioned were, the owners of a railroad which runs from the city of Columbia, in said state, to the city of Greenville, in the said state, which is commonly known as the Columbia and Greenville Railroad, which said railroad passes through the town of Greenwood, in the county of Greenwood, in the said state, together with the engines, cars, locomotives, tracks, and side tracks, or sidings appurtenant or belonging thereunto."

Sixth. "That the defendants are now, and at the times hereinafter mentioned were, operating the said railroad, running as aforesaid, from the city of Columbia, through the town of Greenwood, to the city of Greenville, together with the engines, cars, locomotives, tracks, and side tracks, or sidings thereunto belonging."

After complaint filed, the defendant filed its petition for removal, on the ground of diversity of citizenship, and gave the proper bond. The

cause was removed into this court, the plaintiff not assenting, but giving notice of the motion to remand.

The motion to remand is based upon the statute of the state of South Carolina, of March 9, 1896 (22 St. at Large, p. 114), and the proceeding of this defendant thereunder. The statute is in these words:

"Section 1. Be it enacted by the general assembly of the state of South Carolina, that each and every railroad company or railroad coporation created or organized under or by virtue of any government other than that of this state desiring to own property or carry on business, or exercise any corporate franchise in this state of any kind whatsoever, shall first file in the office of the secretary of state a copy of its charter, paying therefor such fees as may be required by law, and cause a copy of such charter to be recorded in the office of the register of mesne conveyances of clerk of court of common pleas in each county in which such company or corporation desires or proposes to carry on its business or to acquire or own property. Such copy of the charter shall be authenticated in the manner directed by law for the authentication of the statutes of the state or country under whose laws such corporation is chartered or organized.

"Sec. 2. That if any such charter or any part thereof, filed as aforesaid in the office of the secretary of state, shall be in contravention or violation of the laws of this state, such charter or such parts thereof so in conflict with the laws of this state shall be null and void.

"Sec. 3. That when a foreign corporation complies with the provisions and requirements of this act it shall ipso facto become a domestic corporation, and shall enjoy the rights and be subject to the liabilities of such domestic corporation; it may sue and be sued in the courts of this state, and shall be subject to the jurisdiction of this state, as fully as if it were originally created under the laws of the state of South Carolina.

"Sec. 4. That it shall be unlawful for any such foreign corporation to do business, or attempt to do business, in this state without first having complied with the requirements of this act, and any violation of this act shall be punished by the forfeiture to the state by the party offending of a penalty of five hundred dollars, to be recovered by suit in the court of common pleas for any county in which such offender does or attempts to do business, or in any other court of competent jurisdiction.

"Approved the ninth day of March, A. D. 1896."

The defendant company complied with the provisions of this act, and insisted upon its right to them. This contention was sustained by the supreme court of the state. State v. Tompkins, 48 S. C. 49, 25 S. E. 982. The motion to remand is based on this statute of the state. The plaintiff contends that, by the operation of the statute and the action of the defendant thereunder, it has become in all respects a corporation of the state of South Carolina, and has lost any right of removal into this court. If the intent of this statute is to impose as a condition upon foreign corporations, before they are allowed to do business in this state, such action on their part as will deprive them of, or prevent them from seeking, the jurisdiction of the federal court, it is inoperative and void. No state legislature can lawfully impose such a condition in express terms upon any corporation seeking to do business in a state, nor would the acceptance of any such condition bind such corporation, nor can any state legislature by indirection accomplish that which it cannot do directly. In Insurance Co. v. Morse, 20 Wall. 445, a condition prescribed for corporations before doing business in a state that they must first agree not to remove a suit for trial into the United States circuit court or federal courts is repugnant to the constitution of the United States and the laws in pursuance thereof, and is null and void; and, further, the agreement filed by a

corporation under such an act is also void. This case was affirmed (Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931); and this case emphasizes the doctrine that all legislation, the intent and purpose of which is to deprive a foreign corporation of the privilege of suit in the federal courts,—a privilege secured to it by the constitution,—is wholly null and void. So, also, the doctrine is fully sustained in Southern Pac. Co. v. Denton, 146 U. S. 202, 13 Sup. Ct. 44. All the cases sustain this proposition also: "That agreements in advance to oust the courts of jurisdiction conferred by law are illegal and void, and that, while the right to remove a suit may be waived or its exercise omitted in each recurring case, a party could not bind himself in advance by an agreement which might be specifically enforced thus to forfeit his right at all times and on all occasions whenever the case might be presented." Barron v. Burnside, supra. This being so, if the purpose of the act was to impose a condition of this sort, and that purpose was expressed, there can be no doubt it would be invalid; and if the purpose is in the act without frank expression, but is there to all intents and purposes, then that purpose would be unlawful, and to this extent the act would be invalid. Moore v. Railway Co., 21 Fed., at page 819.

Whatever may be the purpose of the act, or whether it be valid or invalid, do its provisions prevent the Southern Railway Company from seeking the jurisdiction of this court? Is it made so far a corporation of the state of South Carolina as to deprive this court of jurisdiction over a suit between it and a citizen of South Carolina? It must first be noticed that the act of assembly now under discussion does not profess to create a corporation. It assumes a corporation already created and organized under the authority of some other state or power. It then, after certain formalities are observed, adopts that corporation as a domestic corporation.

A corporation is the creature of the state under whose legislation it is formed. It cannot devest itself of its paternity, nor can it ever lose it, nor can the subsequent act of any state or sovereign change it. On this point the supreme court, in Nashua & L. R. Corp. v. Boston & L. R. Corp., 136 U. S., at page 372, 10 Sup. Ct. 1007, say:

"A more satisfactory answer would, perhaps, have been, that, whatever effect may be attributed to the legislation of Massachusetts in creating a new corporation by the same name with that of the complainant, or in allowing a union of its business and property with that of the complainant, it did not change the existence of the complainant as a corporation of New Hampshire, nor its character as a citizen of that state, for the enforcement of its rights of action in the national courts against citizens of other states. Indeed, no other state could, by its legislation, change this character of that corporation, however great the rights and privileges bestowed upon it. The new corporation created by Massachusetts, though bearing the same name, composed of the same stockholders, and designed to accomplish the same purposes, is not the same corporation with the one in New Hampshire. Identity of name, powers, and purposes does not create an identity of origin or existence, any more than any other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute, and to the corporation created by it, there can be but one legislative paternity."

The jurisdiction of the circuit courts of the United States, when based on diversity of citizenship, is confined to suits between citizens of states, and aliens. If plaintiff or defendant be a citizen of a terri-

tory or of the District of Columbia, jurisdiction will not attach. He must be a citizen and resident of a state. A corporation is not a citizen, within the meaning of the acts of congress. "It is a political being, created by the law, and cannot sustain the character of a citizen." Curt. Jur. U. S. Cts. 128. When a suit is brought by a corporation in the United States circuit court, based on diversity of citizenship, the jurisdiction is maintained upon the ground that, the corporation being a foreign corporation, the corporators are citizens of another state than the defendant. Insurance Co. v. Boardman, 5 Cranch, 57; Bank v. Slocumb, 14 Pet. 60; Bank v. Deveaux, 5 Cranch, 61. At first this fact had to be averred and proved. Subsequently the supreme court held that the court would presume as a matter of fact that the corporators of a corporation of another state were citizens of that state, and no averment or evidence to the contrary was admissible. Railroad Co. v. Wheeler, 1 Black, 286; Railroad Co. v. Letson, 2 How. 497. This presumption is conclusive. Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58. But the jurisdiction depends upon the fact, that is conclusively presumed, that the corporators are citizens of the state creating the corporation. So, when the Southern Railway Company comes into this court, and claims jurisdiction, the claim is not based upon the fact that it is a corporation of the state of Virginia or a citizen of Virginia, but upon the fact that its corporators are citizens of Virginia. Now, when the state of South Carolina adopts this corporation of the state of Virginia, and makes it a domestic corporation, it neither makes the corporation a citizen of this state, nor can it make the corporators of the Virginia corporation citizens of South Carolina. The courts will not do this; nor will they extend the doctrine that the corporators of a corporation are indisputably citizens of the state creating it, so as to presume in like manner that corporators of an adopted corporation are citizens of the state adopting it. Railroad Co. v. James, 161 U. S. 545, 16 Sup. Ct. 621.

In the circuit court of appeals of the Sixth circuit is a well-considered case on this subject. Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 23 C. C. A. 378, 75 Fed. 437. The opinion of the court is delivered by a learned and accurate circuit judge (Taft). The Louisville, New Albany & Chicago Railroad Company had been incorporated by the state of Indiana. Subsequently the legislature of Kentucky passed an act, the first section of which is in these words:

"That the Louisville, New Albany & Chicago Railway Company, a corporation organized under the laws of the state of Indiana, is hereby constituted a corporation with power to sue and be sued, contract and be contracted with, to have and use a common seal with the power incident to corporations and authority to operate a railroad."

The plaintiff was a citizen of Kentucky, and to the suit brought in the circuit court of the United States it was contended that the defendant railway corporation was a corporation of the state of Kentucky, and so a citizen of that state, and that the court was without jurisdiction. After discussing the question whether or not the act of the legislature of Kentucky created a new corporation, or merely licensed and recognized the Indiana corporation, the court say:

"But even if the Kentucky acts did create a new corporation out of the Louisville, New Albany & Chicago Railway Company, in 1880, the new corporation, though created by Kentucky law, was, for the purposes of federal jurisdiction, a citizen of Indiana."

For this the court rely on Railway Co. v. James, supra.

The doctrine is summed up in these words by the supreme court, in Railroad Co. v. Steele:

"While a railroad company owning and operating a line running through several states may receive and exercise powers granted by each, and may for many purposes be regarded as a corporation of each, such legislation does not avail to make the same corporation a citizen of every state it passes through, within the meaning of the jurisdiction clause of the constitution of the United States." 167 U. S. 659, 17 Sup. Ct. 925.

So, whether we construe the act of assembly of the state of South Carolina as imposing a condition upon foreign corporations, which conflicts with the constitution of the United States and the laws passed thereunder, or whether we construe the act as adopting foreign corporations, and as making them for many purposes domestic corporations, still, the jurisdiction of this court over such corporation is not affected thereby, and it can seek and receive the exercise of this jurisdiction notwithstanding the existence of this act. The motion to remand is refused.