## GOODLOE v. TENNESSEE COAL, IRON & R. CO.

(Circuit Court, N. D. Alabama, N. D. August 7, 1902.)

1. FOREIGN CORPORATION—GRANT OF PRIVILEGES—DOMESTICATION OF CORPORATION.

Acts Ala. 1892–93, p. 454, entitled "Relating to the Tennessee Coal, Iron & Railroad Company, and to confer certain rights and powers on said company," provides that such corporation, "created by and existing under the laws of Tennessee," shall enjoy all privileges and immunities conferred by general laws for industrial purposes. It is authorized to build furnaces, etc., is given the power of eminent domain, authorized to consolidate with other corporations, and form one general one, under another name, but it is provided that the act shall not limit the rights of the corporation under its Tennessee charter. The constitution of Alabama declares that the subject of an act shall be stated in the title. *Held* that, as the statute gave no suggestion of an intent to create a corporation, it did not make the Tennessee Coal, Iron & Railroad Company a corporation of Alabama, nor was the corporation's acceptance of the powers conferred any consent to such a change in its status.

On Motion to Remand.

This suit was commenced in the circuit court of Colbert county, Ala., by E. L. Goodloe against the Tennessee Coal, Iron & Railroad Company to recover $50,000 damages for personal injuries, and was removed on the petition of the defendant, which states that it is a citizen of the state of Tennessee, "a corporation organized and existing under the laws of the state of Tennessee," and that plaintiff is a citizen of Alabama. Motion is made to remand on the ground that the defendant is a citizen of Alabama, and an act of the general assembly of Alabama "relating to the Tennessee Coal, Iron & Railroad Company, and to confer certain rights and powers on said company," approved February 10, 1893 (Acts 1892–93, p. 454), is relied on to support that contention. The first section of the act provides "that the Tennessee Coal, Iron & Railroad Company, a corporation doing business in this state, but created by and existing under the laws of the state of Tennessee, is hereby vested with, and after the passage of this act, shall have, possess and enjoy all the rights, privileges, franchises and immunities which are now or hereafter may be conferred by the general laws of the state of Alabama for mining, manufacturing or industrial purposes." The second section authorizes said company to lay its lands off into lots, and make donations of lands and money to other corporations, to construct tramroads, etc., and to build railroads to connect different parts of its property. The third section authorizes said company to build furnaces, mills, factories, and industrial enterprises of all kinds, to invest in the stocks or bonds of other corporations, to lease same, etc. The fourth section authorizes the company to build railroads, to own and operate mines, furnaces, and coke ovens, to own water craft, and to operate lines of steamboats in this state, or in the Gulf of Mexico and adjoining waters, etc. The fifth section confers the power of eminent domain upon the company. The sixth section authorizes the company to consolidate with other corporations, etc., and form one general company under such name and style as may be agreed upon, to take up the individual stock of each company, and to replace it with the stock of the general company: provided "such consolidated company shall keep an office in the state of Alabama, and thereupon, said general company shall be invested with all the powers and franchises heretofore belonging to each and all of said corporations so consolidated," etc. Section 7 provides "that nothing herein contained, shall be construed as in any way limiting the rights, priv-

---

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 2497, 2498.

ileges and immunities which the said Tennessee Coal, Iron & Railroad Company may now possess and enjoy under the charter granted to it by the state of Tennessee."

Thos. R. Roulhac and Kirk & Rather, for plaintiff.
Walker Percy and W. I. Grubb, for defendant.

JONES, District Judge (after stating the facts as above). The title of the act, "Relating to the Tennessee Coal, Iron & Railroad Company, and to confer certain rights and powers on said company," gives no hint of any intent to create a corporation. According to the title, the corporation which is to take these powers is already in existence, and the title avows no other purpose than to grant unconditionally to the corporation already created by the state of Tennessee the powers, privileges, and immunities named in the act. It does not foreshadow in the least any design to create a corporation. The state constitution exacts that the subject of the act shall be clearly expressed in the title, and renders invalid provisions in the body of the act which do not fall within the scope of the title. It is unnecessary to inquire or decide whether provisions in the body of this act, which it is claimed have the effect to create a corporation, do not infringe this constitutional provision, since an examination of the whole act leads to the conviction that the legislature had no intent to create a corporation, or in any wise to interfere with the corporate character of the Tennessee company. The act simply vests rights and privileges unconditionally in a named corporation, which the act declares is "created by and existing under the laws of the state of Tennessee." It is upon the corporation thus organized and existing, doing business in this state, but owing its powers and corporate organism to the state of Tennessee, that the powers are conferred. Apt words to create a corporation, such as "hereby incorporated," "declared a body corporate," "created a body politic," and the like, are nowhere used in the act. On the contrary, in the only place in which the act refers to the creation of a corporation, it speaks of one already created or existing under the laws of the state of Tennessee, or one that may hereafter be created by voluntary consolidation. The act having singled out a named foreign corporation, which it recognizes as already created by and existing under the laws of another state, to enjoy the powers conferred, there was no necessity to create a corporation to take the benefits conferred by the statute, and no reason for imputing to the legislature the intent to create a different corporation or a new corporation to receive the powers which the act declares it intends to confer upon the Tennessee corporation. The body of the act nowhere deals with the autonomy or internal government of the Tennessee corporation. It leaves its organism just as the state of Tennessee created it. It does not define the relations of the shareholders to each other, the amount of the capital stock, the officers of the company, their powers or tenure, or where they shall meet or have their principal place of business. It does not declare that the Tennessee corporation shall be subjected to the same restrictions as domestic corporations, or that its character as a foreign corporation shall be changed in order that it may enjoy the

powers which are now, or hereafter may be, conferred upon corporations organized under the general laws of the state of Alabama for mining, manufacturing, or industrial purposes. It lays no commands whatever upon the Tennessee corporation, and does not put upon it the slightest duty to undertake any of the things which the act authorizes it to do. The creation of another corporation was in the mind of the legislature in one contingency only, and that was in event the Tennessee corporation chose to consolidate with other corporations. In that event only does the act refer in the remotest way to the creation of another corporation, and in that event only did the legislature contemplate that the corporate character of the Tennessee Coal, Iron & Railroad Company should be changed, and then only by the voluntary merger in "the general company." The sixth section plainly shows there was no intent to interfere in any way with the corporate organism of the Tennessee Coal, Iron & Railroad Company, unless it formed, "under such name and style as may be agreed upon," a new or general company. In that event, the change would be the result of the voluntary act of the Tennessee company, and the terms of the act, unaided and alone, would not create a new corporation. After dealing with the whole subject, and evidently for the purpose of leaving no doubt as to its intention, the legislature expressly provided that "nothing herein contained shall be construed as in any way limiting or interfering with the rights, privileges and immunities which the said Tennessee company may now enjoy and possess under the charter granted to it by the state of Tennessee." The court is not advised as to the general powers granted to the Tennessee company under the Tennessee charter. It is a private charter, and has not been given in evidence. The court does judicially know, however, that one of the rights, privileges, and immunities which the Tennessee Coal, Iron & Railroad Company may now possess and enjoy, under the charter granted to it by the state of Tennessee, is the right, privilege, and immunity to be regarded and treated as a corporation under the laws of the state of Tennessee. The immunity so to be treated carries with it the right or immunity not to be treated as a corporation under the laws of Alabama. This language is contained in the seventh and last section of the act. It is a positive command not to consider the Alabama act as "in any way" limiting the rights, privileges, or immunities of the Tennessee company under the charter granted to it by the state of Tennessee. If this command is obeyed, it forbids any construction of the act which would impute to the legislature the intent to create a new corporation, or to effect the adoption by this state of a foreign corporation as a domestic corporation. The foreign corporation is mentioned in connection with domestic corporations solely to measure the extent of the powers granted to the foreign corporation which it might enjoy under the general laws of this state. Not a word is said in the act about subjecting the foreign corporation to the control of the state in the same manner as domestic corporations are controlled, or which evinces the purpose of the legislature to compel the foreign corporation to abjure allegiance to the state which created it. Whether or not the Tennessee corpora-

tion, under the charter granted to it by that state, had authority to accept the grant of powers from the state of Alabama, or to engage in the matters authorized by the Alabama act, are questions of no moment here. If the Tennessee corporation has transgressed its charter in this respect, it is amenable therefor to the state of Tennessee, and not to the state of Alabama. The state of Alabama has no power, without the consent of the Tennessee company, to alter, amend, or repeal the charter granted to it by the state of Tennessee. Granting to the foreign corporation larger powers under the Alabama laws than it possessed under the charter of the state which created it cannot convert the foreign corporation into a domestic corporation, unless the Alabama legislation so declares, expressly or by necessary implication, and the foreign corporation consents expressly or impliedly to accept the new powers on those terms. There is no such declaration and no such consent here. On the contrary, there is an express avowal on the part of the lawmaking power of Alabama that the legislation shall not affect the status of the foreign corporation under the laws of Tennessee. The acceptance of the act and the exercise of the powers by the foreign corporation are therefore plainly no consent to any change in the status of the Tennessee corporation as a foreign corporation. The Alabama legislation said to the Tennessee company in substance: "Alabama recognizes you as doing business here under the charter granted by the state of Tennessee. You may continue to do business here under that charter, exercising in addition the privileges and rights now conferred, or hereafter conferred, upon Alabama corporations engaged in like business as yours, with certain other privileges in addition; but all upon the condition that the legislation shall not interfere 'in any way' with any of the rights you now possess and enjoy under the charter granted to you by the state of Tennessee." There is nothing in all this which implies either "creation" or "adoption." It amounts to a mere license to the foreign corporation, as such, to do business, it may be, with greater powers than it possessed under the laws of the state of its creation. Goodlet v. Railroad Co., 122 U. S. 391, 7 Sup. Ct. 1254, 30 L. Ed. 1230; Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 19 Sup. Ct. 817, 43 L. Ed. 1081. In the latter case the supreme court said:

"This court has repeatedly said that, in order to make a corporation already in existence under the laws of one state a corporation of another state, the language must imply creation or adoption in such form as to confer the power usually exercised over corporations by the state or by the legislature, and such allegiance as a state corporation owes to its creator. A mere grant of privileges or powers to it as an existing corporation, without more, does not do this."

The motion to remand, on the ground that the defendant is a citizen of Alabama, must therefore be overruled.