CAROLINA & N. W. RY. CO. v. TOWN OF CLOVER et al.

District Court, W. D. South Carolina. June 18, 1929.

No. 823.

John A. Marion, of York, S. C., Frank G. Tompkins, of Columbia, S. C., and S. R. Prince and John B. Hyde, both of Washington, D. C., for plaintiff.

Hart & Moss, of York, S. C., for defendant.

WATKINS, District Judge. This is a suit filed by the plaintiff in this court against the town of Clover, seeking to recover the sum of $6,135.27 with interest from July 6, 1927, on account of paving assessment laid by the town of Clover against the plaintiff company, and which assessments were paid under protest by the plaintiff. Jurisdiction of this court is invoked by the allegations of the bill upon two grounds:

(1) On the ground of diversity of citizenship, it being alleged in the complaint that the Carolina & Northwestern Railway Company is a corporation duly created and organized under the laws of the state of North Carolina, and is a citizen and resident of that state, and duly authorized to do business in the state of South Carolina pursuant to an act of the General Assembly of South Carolina, 23 St. at Large, p. 567.

(2) On the ground that the constitutional rights of the plaintiff were being violated by reason of the interposition of the said paving assessment, and that the said assessment and election thereof by the defendant is without due process of law and denial of the plaintiff of equal protection of the laws in violation of the Fourteenth Amendment to the Constitution.

It is also alleged that the said paving assessments sought to be enforced by the town of Clover, and which assessments were paid under protest by the plaintiff, constituted such a palpable discrimination and flagrant abuse of plaintiff's constitutional rights as to constitute a confiscation of its property; the same being a taking of the plaintiff's property without due process of law, without compensation, and in violation of the Fourteenth Amendment to the Constitution of the United States.

The complaint sets forth in great detail the facts in regard to the plaintiff's claim and supporting its allegations that the constitutional rights of the plaintiff are being invaded. For the purposes of this opinion it will not be necessary to consider the allegations of the complaint in detail, but the same will be hereinafter referred to as may become necessary in discussion of the questions involved.

After the filing of the said complaint, the defendant entered a special appearance contesting the jurisdiction of this court on two grounds:

(1) That the plaintiff Carolina & Northwestern Railway Company and the defendant town of Clover were both citizens of the state of South Carolina, and there was no diversity of citizenship; and

(2) That there was no federal question involved either under the Constitution of the United States or under the statute law, and based upon these grounds the motion to dismiss the said case for want of jurisdiction was made.

The question before the court for decision on this motion, therefore, is one of jurisdiction only, and does not concern or involve the merits of the case, and the matter was argued before me upon the pleadings and upon the various statutes and law applicable thereto. The first question, therefore, to be determined is whether this court has jurisdiction on account of diversity of citizenship of the parties.

The complaint alleges that the plaintiff is a North Carolina corporation, and that the defendant the town of Clover is a municipal corporation organized and existing under the laws of the state of South Carolina, both of the said defendants being citizens and residents of the county of York within the jurisdiction of this court. The complaint thus shows on its face and alleges diversity of citizenship, and while the motion to dismiss may be taken as a special plea to jurisdic-

tion, this would put this question in issue. The burden of proof is upon the defendant to show the lack of jurisdiction on this ground. Auto Acetylene Light Co. v. Prest-O-Lite Co. (C. C. A.) 276 F. 539; Big Sespe Oil Co. v. Cochran (C. C. A.) 276 F. 219.

It appears from copy of act of Legislature of North Carolina (Private Laws of North Carolina 1895, chapter 190, page 306), duly introduced at the hearing before me, that the Carolina & Northwestern Railway Company was incorporated by act of the Legislature of North Carolina in the year 1895, and which act was approved March 11th of that year. This act created a body corporate out of certain named natural persons, residents and citizens of North Carolina, under the name and style of the Carolina & Northwestern Railway Company. The corporation thus created was given the power to do business as a corporation, to hold and convey property, and to do any other lawful acts necessary and incident to connection with the corporation and necessary for the control and transaction of its business. This act of incorporation also provided that the said company was authorized and empowered to construct, operate, and maintain a railway or railroad either standard or narrow gauge, on a point on the North Carolina state line in Gaston county through the said county and other named counties in North Carolina, to a point on the state line of Tennessee; and further provided that the company was authorized and empowered to become the owner and possessor by purchase or otherwise of any railroad built, operated, or projected along the route of the aforesaid company, such railroad when so acquired to become a part and parcel of the Carolina & Northwestern Railway Company.

Other provisions of this North Carolina charter provided for the issuance of capital stock, the manner of raising the same, opening of books of subscription, the manner of completing the formation of the corporation by election of president and directors, and certain machinery for the subscription to the capital stock of the company by any township, county, city, or town.

Section 10 of the said charter also provided that the said railway company should have every right, privilege, and power necessary for the purpose of acquiring lands or rights of way as it might need for location and construction of the said railway for extending or altering the same as is given to any other railroad company in North Carolina, and that the said railroad company should have the benefit of every right of proceeding, and be subject to all restrictions provided and imposed by the general railroad laws of the state.

By reference to the terms of this act, it undoubtedly created a corporation out of natural persons, residents and citizens of the state of North Carolina, and the corporation thus created was a resident and citizen of North Carolina.

It appears further from the evidence before me that on January 14, 1897, a certified copy of this North Carolina charter was duly filed with the secretary of state of South Carolina pursuant to an act of the South Carolina Legislature, providing the manner by which foreign railroad corporations should do business in South Carolina (22 St. at Large, S. C., p. 114). This South Carolina statute is commonly known as the "Domestication Act." After the filing of the certified copy of the North Carolina charter with the secretary of state of South Carolina, as provided for by the above statute in the latter state, on February 17, 1900 (23 St. at Large, p. 567), the Legislature of South Carolina passed an act entitled: "An Act to Confirm the Incorporation in this State of the Carolina & Northwestern Railway Company and to Define its Powers." This act in its preamble recited that the Carolina & Northwestern Railway Company was a corporation duly organized under the laws of the state of North Carolina, and had filed its charter granted by the said state with the secretary of state of this state, and had otherwise complied with the Constitution and laws by which foreign railroad corporations might become domesticated under the laws of South Carolina.

This act further provided in section 1 of the same that the filing and recording of the charter granted to the Carolina & Northwestern Railway Company by the state of North Carolina was ratified and confirmed, and that the said railway company "is hereby declared to be a corporation under the laws of the State of South Carolina."

Section 2 of the said act provided that the acquisition and purchase by the Carolina & Northwestern Railway Company of the property, rights, and franchises formerly vested in the Chester & Lenoir Railway Company and the operation of the said railroad in South Carolina was authorized and provided.

Section 3 of the said act provided that the Carolina & Northwestern Railway Company acquired by purchase, lease, or otherwise the property of any other railroad constructed in South Carolina or elsewhere, and further provided that the said company was

empowered to build extensions or branches to its railroad in this state or elsewhere, and should have the power of eminent domain vested in other railroad corporations of this state.

Section 4 provided that the said company should have authority to increase its capital stock from time to time, as might be necessary for constructing, completing, and equipping or changing the gauge of its railroad, and to issue corporate bonds, to secure the same by mortgages on its property, and to dispose of such bonds secured by mortgages on terms and conditions as the board of directors might deem necessary for the construction, completion, and equipping of the said railroad. The essential provisions of the original charter of North Carolina of the plaintiff company and of the act of the South Carolina Legislature of February 17, 1900, have thus been stated in detail, and recited for a proper understanding of the issues raised before me; and the main contention to defeat jurisdiction on the ground of diversity of citizenship rests upon the effect and interpretation of the act of the South Carolina Legislature (23 St. at Large, p. 567). As the court views the matter, if the filing of the North Carolina charter in South Carolina in accordance with domestication acts of this state had been all, then undoubtedly the Carolina & Northwestern Railway Company would still have remained a citizen of North Carolina for the purpose of jurisdiction in the federal court.

Plaintiff, therefore, contends that the act of 1900 did not change the essential nature of the Carolina & Northwestern Railway Company, and that it still remained a citizen of North Carolina for the purpose of jurisdiction in the federal court. The defendant bases its contention on the proposition that the original charter of the plaintiff company in North Carolina only gave it the right to construct a road to the state line, and that the South Carolina act gave powers additional to those conferred by the North Carolina charter, and that the acts of the South Carolina Legislature necessarily had the effect of reincorporating the said railroad in South Carolina as an independent organization, and thus made it a citizen of the latter state for jurisdictional purposes. Therefore, it is argued that diversity of citizenship is not present, and that the Carolina & Northwestern Railway Company has no right to invoke the jurisdiction of this court on that ground.

After careful consideration and investigation of this question, I have reached the conclusion that the defendants' motion to dismiss for lack of jurisdiction on the ground that diversity of citizenship is not present must be overruled, and the plaintiff's position must be sustained.

Whatever may have been the purpose of the Act of February 17, 1900, I am convinced that its effect under the decision of the United States Supreme Court hereinafter referred to fell short of creating the Carolina & Northwestern Railway Company into a new or independent South Carolina corporation in the sense which would preclude this company from invoking the jurisdiction of this court on the ground that it was still a North Carolina corporation. It is true that section 1 of that act declares the Carolina & Northwestern Railway Company to be a corporation under the laws of the state of South Carolina. This, however, goes no further in effect than confirming what is accomplished under the South Carolina Domestication Act of March 9, 1896 (22 St. at Large, p. 114).

Section 2 of the Act of February 17, 1900 (23 St. at Large, p. 567), at first glance might seem to indicate the purpose of consolidation of the North Carolina corporation with the Chester & Lenoir, a South Carolina railroad. Such, however, is not the fact. This section only provides for that to be done which is authorized by the Domestication Act, and a careful consideration of the same indicates an absorption rather than a consolidation in the sense used in the case of Memphis Ry. v. Alabama, 107 U. S. 581, 2 S. Ct. 432, 27 L. Ed. 518. The stockholders of the Chester & Lenoir Railroad are not made stockholders of the Carolina & Northwestern. On the contrary, the statute contemplates the entire liquidation of their interest and the transfer of all the property, rights, and franchises of the South Carolina corporation to the North Carolina corporation, and simply confirms this absorption, which had been consummated by the recited purchase on behalf of the Carolina & Northwestern Railway Company of the Chester & Lenoir.

The rights given in sections 3 and 4 of the Act of 1900 are only such as are appropriate to be exercised by the North Carolina corporation, and were such as could not be independently exercised by a separate or independent South Carolina organization. In other words, the above act falls short of the rules laid down in decisions of the Supreme Court of the United States as necessary for the independent entity of a local railroad corporation, and the Carolina & Northwestern Railroad having been created and established by act of the Legislature and

chartered by the state of North Carolina, citizenship in that state for the purpose of federal jurisdiction was undoubtedly conferred and still remains, and was not changed by the act of the Legislature of South Carolina. There were no natural persons creating a new corporation in South Carolina, and the usual framework for the formation of corporations in this state is entirely lacking under the act of 1900. There is no provision as to opening of books of subscription, petition for organization, or amount of capital stock, or other things incident to the formation of a new corporation under the laws of this state. On the other hand, we have this act giving its intent and purpose at the very outset in its title, and in its preamble, "An Act to Confirm the Incorporation in this State of the Carolina & Northwestern Railway Company and to Define its Powers." The powers enumerated in this act were certainly not conferred upon any new body, because there is no evidence of any intention to form such a new body corporate, but such powers as were conferred were upon the corporation which had existed under the laws of the state of North Carolina, and which were still in existence as a legal entity, and this corporation simply became the recipient of the other powers named in South Carolina. In fact, the powers conferred under the South Carolina act were in substance not really additional powers to those already possessed by the Carolina & Northwestern Railway Company under its North Carolina charter.

It is noted that by section 10 of the North Carolina charter the railroad company should have every right and power, subject to all restrictions imposed under the General Railroad Law of the State. By chapter 108, North Carolina Public Laws of 1885, it was provided that every railroad corporation should have the right to aid in the construction of any railroad in "this or an adjoining State connected with it directly or indirectly." Section 1. The power to issue bonds secured by mortgage or otherwise as provided for in the South Carolina act, was conferred upon all North Carolina corporations by section 1957 of the North Carolina Code of 1883, and was in force at the time of the incorporation of the Carolina & Northwestern.. Therefore the Carolina & Northwestern had power under its original charter, and under the general law of North Carolina most of the powers purported to be granted by the South Carolina act of 1900. All the powers granted under the South Carolina act were matters peculiarly touching to the operation

of the Carolina & Northwestern in this state in regard to building extensions, financing the same, exercising power of eminent domain, etc. The corporate structure of the North Carolina corporation was not interfered with.. The very fact that the company was granted by the South Carolina act the privilege of increasing its capital stock shows that no new corporation was attempted to be created, but that the purpose was that the existing corporation in North Carolina should have the privilege of increasing its capital stock in South Carolina so as to provide for construction of roads in the latter state. The South Carolina act did not provide for opening of books of subscription, nor provide in regard to election of directors or officers, nor provide about the place of business, and no other evidence in any manner was contained in the South Carolina act indicating an intention to interfere with, dispose of, or wipe away the legal existence of the North Carolina corporation and to create a new body in its place.

Therefore, the Act of February 17, 1900, conferred upon the Carolina & Northwestern Railway, a North Carolina corporation, the right or license to do business in South Carolina with the same and probably some few incidental powers other than mentioned in its orignal charter; but this did not disturb the essential fact that the corporation was still a citizen of North Carolina. In 14a C. J., p. 1231, it is stated: "Acts of the Legislature creating corporations must be distinguished from acts which merely recognize a corporation chartered by another state, and allow it to exercise some or all of its functions or powers within the State."

The views above expressed are in accordance with the opinions of the Supreme Court of the United States.

In Penn. Ry. Co. v. St. Louis, Alton & Terre Haute R. Co., 118 U. S. 290, 6 S. Ct. 1094, 1096, 30 L. Ed. 83, a railroad company had been incorporated by act of the Legislature of Illinois, the charter of this railroad giving it a right to construct a road from the state line of Illinois across the state to Alton in Illinois. It will be seen that *no power was given to construct a road outside the state in the original charter*. Shortly thereafter the Legislature of *Indiana* passed an act authorizing the company to extend its road through *Indiana* to Terre Haute. A few years later the company was reorganized, becoming the St. Louis, Alton & Terre Haute Railroad Company, and succeeding to all the rights of the old company. On questions raised as to *jurisdiction and domicile*

of the railroad company, the Supreme Court held that the company remained an Illinois corporation for jurisdictional purposes by reason of the incorporation of the original company, and could maintain on action in the federal courts against an *Indiana* corporation. The court said, speaking through Mr. Justice Miller:

"It does not seem to admit of question that a corporatioin of one State, owning property and doing business in another state by permission of the latter, does not thereby become a citizen of this State also. And so a corporation of Illinois, authorized by its laws to build a railroad across the State from the Mississippi River to its eastern boundary, may, by the permission of the State of Indiana, extend its road a few miles within the limits of the latter, or, indeed, through the entire State, and may use and operate the line as one road by the permission of the State, without thereby becoming a corporation or a citizen of the State of Indiana; nor does it seem to us that an Act of the Legislature conferring upon this corporation of Illinois by its Illinois corporate name, such powers (to enable it to use and control that part of the road within the State of Indiana) as have been conferred on it by the State which created it, constitutes it a corporation of Indiana. It may not be easy, in all such cases, to distinguish between the purpose to create a new corporation which shall owe its existence to the law or Statute under consideration, and the intent to enable the corporation already in existence under laws of another State to exercise its functions in the State where it is so received. The latter class of laws is common in authorizing insurance companies, banking companies, and others to do business in other States than those which have chartered them. To make such a company a corporation of another State, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the Legislature, and such allegiance as a State corporation owes to its creator. *The mere grant of privileges or powers to it as an existing corporation, without more does not do this, and does not make it a citizen of the State conferring such powers."*

In Goodlet v. Louisville & Nashville Ry. Co., 122 U. S. 391, 7 S. Ct. 1254, 30 L. Ed. 1230, we have Louisville & Nashville Railway incorporated by an act of the *Kentucky* Legislature in 1850. This act authorized the company to build a railroad *"to the Tennessee Line."* A year later the Tennessee Legislature enacted a statute entitled "An Act to *Incorporate* the Louisville & Nashville Railroad Company." This Tennessee act empowered the company to build its line of railroad from the state line through the state of Tennessee to Nashville subject to all the provisions of the Kentucky charter, and all rights and liabilities contained therein with certain exceptions. The Tennessee act required certain of the directors to be residents of Tennessee, and by additional legislation the state of Tennessee made further modifications in the charter, giving the company two additional directors, empowering it to merge with a Tennessee corporation, empowering it to issue bonds, to build a bridge and certain other features. Notwithstanding these provisions it was held that the railroad company remained a citizen of *Kentucky* for jurisdictional purposes and was entitled to remove into the federal courts an action commenced against it by a citizen of Tennessee.

Let the facts of this case be noted carefully in the light of the present case. There the act of Tennessee purported to *incorporate* the Louisville & Nashville Railroad Company, and it also made provision regarding internal management of the company in the particulars noted. The original *Kentucky* charter, just as the Carolina & Northwestern charter here, only gave the railroad the right to construct a road to the state line. The Tennessee act provided additional features and powers than were provided in the original Kentucky charter. Notwithstanding this, it was held that the railroad was still a Kentucky corporation and entitled to go into the federal court.

In Ohio & Mississippi Ry. Co. v. Wheeler, 1 Black, 286, 17 L. Ed. 130, the plaintiff corporation, representing itself to be a citizen of Ohio, brought an action against the defendant, a citizen of Indiana, in the United States Circuit Court for Indiana. It appeared that the plaintiff was originally incorporated in Indiana. The Ohio Legislature had subsequently passed an act to "recognize, affirm and adopt" the charter of the said company as enacted by Indiana, and to authorize the company to extend its line to Cincinnati. It was held that the plaintiff was an Indiana corporation with a mere license to operate in Ohio.

In Baltimore & O. Ry. Co. v. Harris, 12 Wall. 65, 20 L. Ed. 354, the Baltimore & Ohio Railway Company had been incorporated by act of the Legislature of Maryland. Later the Legislature of Virginia passed an act reciting the Maryland act and declaring "that the same rights and privileges shall be

granted to the aforesaid Company within the territory of Virginia, and the said Company shall be subject to the same pains, penalties and obligations as are imposed by said Act, and the same rights, privileges and immunities which are reserved to the State of Maryland or to the citizens thereof are hereby reserved to the State of Virginia and her citizens." It was held that the Virginia act was a mere license and nothing more, that the license was given to the Maryland corporation as such, and in no degree changed the character or status of that body, which remained for the purpose of federal jurisdiction a Maryland citizen.

The whole doctrine and trend of the decisions of the federal courts along this line were clarified by the decision in the James Case (St. Louis & San Francisco Ry. Co. v. James, 161 U. S. 545, 16 S. Ct. 621, 40 L. Ed. 802), and the court laid down for the first time the true basis of the rule, which was that there is a presumption that a corporation is composed of citizens of the state which created it, which presumption accompanies such corporation when it does business in another state. In that case it is noted that the San Francisco Railway was first incorporated under the laws of Missouri, and operated its railroad only to the *state line*. A subsequent act of the Arkansas Legislature conferring certain rights and powers was held not to make the railroad a citizen of Arkansas for the purpose of federal jurisdiction. The court in the James Case thus distinctly pointed out that where a corporation *as such* is rechartered in another state by act of the Legislature, it must remain a citizen of the original state of its creation, because the imputed citizenship of the incorporators governs the citizenship of the corporation. On the other hand, where *natural persons* go through the incorporation process in several states there is a distinct corporation for jurisdictional purposes in each of those states. This is the true test and the true line of reasoning that goes through all the cases. It is perfectly immaterial whether new powers are granted to the foreign corporations as such. The question is whether the corporation *as such* is rechartered, in which case it keeps its original citizenship; or whether the *incorporators* themselves are given a new charter, in which case new citizenship is established.

In Louisville, New Albany & Chicago Ry. Co. v. Louisville Trust Co., 174 U. S. 552, 19 S. Ct. 817, 43 L. Ed. 1081, this proposition is further clarified. In that case the plaintiff railroad had been incorporated under the laws of Indiana, and later the *Legislature of Kentucky passed an act incorporating it in Kentucky as a Kentucky corporation.* A special act of Kentucky conferred upon the railway not only the powers enumerated, but all powers incident to the corporation which were possessed by other corporations created under the laws of Kentucky. The railroad accepted the Kentucky charter, and thereafter on a number of occasions described itself as a Kentucky corporation. In one case it filed suit in the United States Court for the District of Kentucky, the defendants in which were citizens of Kentucky. Jurisdiction was contested on the ground that the plaintiff was a citizen of Kentucky and could not invoke the jurisdiction of the federal court. The Supreme Court rejected this contention and held that the railroad being first created a corporation of Indiana, even if it were afterwards created a corporation in the state of Kentucky also, it remained for the purpose of jurisdiction for the court of United States a citizen of Indiana.

Attention is also called to the case of Southern R. Co. v. Allison, 190 U. S. 326, 23 S. Ct. 713, 47 L. Ed. 1078, which is full and to the point on the question discussed.

In the case of Goodloe v. Tennessee Coal Co. (C. C.) 117 F. 348, there was an Alabama statute relating to the Tennessee Coal, Iron & Railroad Company, attempting to confer certain rights and powers on the said company. This act provided that *such corporation created and existing under the laws of Tennessee* should enjoy all privileges and immunities conferred by general laws for industrial purposes, authorize such company to build furnaces, given power of eminent domain, authorize consolidation with other corporations, provided that the act should not limit the right of the corporation under its *Tennessee* charter. It was held that the Alabama statute did not create a new corporation out of the Tennessee Coal & Iron Company in Alabama, but it still remained a Tennessee corporation. Other cases holding the same principles are as follows: Missouri Pacific Ry. Co. v. Castle, 224 U. S. 541, 32 S. Ct. 606, 56 L. Ed. 875; Walters v. Chicago, etc., Ry. (C. C.) 104 F. 377; Chapman v. Ala. Great Sou. Ry. (C. C.) 59 F. 370; Fairfield v. Great Falls Mfg. Co. (C. C.) 175 F. 305; Cummins v. C., B. & Q. Ry. Co. (D. C.) 193 F. 238; Hollingsworth v. Sou. Ry. Co. (C. C.) 86 F. 353; Atlantic C. L. Ry. v. Dunning (C. C. A.) 166 F. 850.

The defendant relied on the principles announced in the cases of Memphis Ry. v. Ala., 107 U. S. 581, 2 S. Ct. 432, 27 L. Ed. 518, and

Nashua & Lowell Ry. v. Boston, 136 U. S. 356, 10 S. Ct. 1004, 34 L. Ed. 363.

These cases, however, are not applicable to the present case. In the Alabama case a corporation had been chartered in Tennessee, but had been made by the statute of Alabama an Alabama corporation. The act of the Legislature of Alabama, however, required that books of subscription of stock be opened, so as to give the citizens of Alabama an opportunity to take stock, and it was required that the company should designate the time and place in Alabama where the election of directors should be given and notice should be given in Alabama. The court held that in the provisions of this act there was a separate Alabama corporation, and that it was the intention of the Legislature of that state to create and charter a separate and independent corporation. In a number of cases following the Alabama case it was held that where a corporation was chartered in more than one state, it was a citizen of each of those states for jurisdictional purposes; but these cases will show that in all instances natural persons were incorporated in more than one state. Of course, the incorporation of natural citizens in one or more states made the corporation a citizen of each of those states, even though one body in fact, and one organization. So where a corporation of diverse states merged into a new corporation, the new corporation succeeding to the rights and franchises of the old one, it has been held that the former would be citizens of each of the states where the original corporations were chartered.

In Patch v. Wabash Ry., 207 U. S. 277, 28 S. Ct. 80, 52 L. Ed. 204, 12 Ann. Cas. 518, the test as laid down by Mr. Justice Holmes was whether or not the second alleged incorporation of a company previously corporated under the laws of another state was "simultaneous and free"; but the question of what would be the law where a corporation originally created in one state afterwards becomes compulsorily domesticated in another state under the terms of a domestication act in order to extend its powers was not involved, neither were the decisions in the Allison, James, and Louisville Trust Company Cases overruled or modified. The distinction between the Alabama case relied on by defendants and other cases above cited was pointed out in review by the court in the case of Sou. Ry. v. Allison, 190 U. S. 326, 23 S. Ct. 713, 47 L. Ed. 1078.

The above principles are also in accordance with the South Carolina cases of Wilson v. Sou. Ry., 64 S. C. 162, 36 S. E. 701, 41 S. E. 971; Calvert v. Railway, 64 S. C. 139, 36 S. E. 750, 41 S. E. 963; Carolina, C. & O. Ry. v. McCown, 84 S. C. 323, 66 S. E. 418. And this doctrine is further discussed in exhaustive note 18 A. L. R. 135.

For these reasons, therefore, it is concluded that the Carolina & Northwestern Railway Company was for the purpose of jurisdiction a North Carolina corporation, and has the right to invoke the jurisdiction of this court on the ground of diversity of citizenship.

On the second ground stated in the motion to dismiss, to wit, that no constitutional questions are raised, I am of the opinion that the position of the defendants must also be overruled. As stated at the beginning of this opinion, the bill alleges that the enforcement and collection of the paving assessment by the town of Clover was taking of property without due process of law, denial of equal protection of the laws under the Fourteenth Amendment, and that the taxes imposed were unwarranted, arbitrary, unreasonable, and confiscatory. The allegations of the bill show that jurisdiction was invoked under section 24 of the Judicial Code (28 USCA § 41) for violation of constitutional provisions as well as diversity of citizenship. In numerous other cases the Supreme Court of the United States has held that if a cause of action is asserted, alleging the violation of constitutional provisions, the federal court has jurisdiction regardless of the citizenship of the parties.

See section 41, title 28, of the U. S. Code (28 USCA § 41), formerly section 24 of the Judicial Code. Under this section the federal courts have jurisdiction even though the suit originated between citizens of the same state where the matter involved exceeds the sum of $3,000 and arises under the Constitution of the United States, and even though diversity of citizenship is not present. The allegations of the bill and facts stated therein are sufficient to show an alleged claim of violation of the Fourteenth Amendment on the ground that the taxes imposed are arbitrary and confiscatory, and on such grounds jurisdiction in the present case must be sustained regardless of diversity of citizenship. City Ry. v. Citizens' Street Ry. Co., 166 U. S. 557, 17 S. Ct. 653, 41 L. Ed. 114; Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 280, 33 S. Ct. 312, 57 L. Ed. 512; Cuyahoga-River Power Co. v. Akron, 240 U. S. 462, 36 S. Ct. 402, 60 L. Ed. 743; Greene v. Louisville Ry. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Paducah v. Paducah Ry. Co., 261 U. S. 268, 43 S. Ct. 335, 67 L. Ed. 649; Hays v. Port of Seattle, 251 U. S. 234, 40 S. Ct. 125, 64 L. Ed. 244; Columbus Ry. v. Columbus, 249 U. S. 399, 39 S.

Ct. 349, 63 L. Ed. 669, 6 A. L. R. 1648; Mitchell v. Dakota Central Telegraph Co., 246 U. S. 396, 38 S. Ct. 362, 62 L. Ed. 793; Owensboro v. Cumberland Telegraph Co., 230 U. S. 58, 33 S. Ct. 988, 57 L. Ed. 1389; Everglades v. Broward, 251 U. S. 567, 40 S. Ct. 219, 64 L. Ed. 418; Davis v. Wallace, 257 U. S. 478, 42 S. Ct. 164, 66 L. Ed. 325; Sou. California Telegraph Co. v. Hopkins (C. C. A.) 13 F.(2d) 814.

The conclusion reached in this opinion will be consummated and carried out by formal order filed this day.